IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| St. Ignatius High School of Cleveland, | CASE NO. 1:26-cv-474 |
| Plaintiff, | JUDGE DAN AARON POLSTER |
| v. | |
| Alexy Metals, Ltd., | **MOTION TO DISMISS PLAINTIFF ST. IGNATIUS HIGH SCHOOL OF CLEVELAND'S COMPLAINT OR, ALTERNATIVELY, STRIKE ALLEGATIONS** |
| Defendant. | |

**TABLE OF CONTENTS**

I. RELEVANT FACTS.................................................................................................................2

II. STANDARD OF REVIEW ....................................................................................................3

III. ARGUMENT .......................................................................................................................5

      A.     The Alexy Metals Shield Is Not Substantially Similar to the St.
            Ignatus Shield. ....................................................................................................5

      B.     Alexy Metals' Use Is Fair Use........................................................................9

      C.     St. Ignatius's Claim Is Barred by the Statute of Limitations .........................12

      D.     Alternatively, the Court Should Strike St. Ignatius' Claim for
            Statutory Damages and Attorneys' Fees.........................................................13

IV. CONCLUSION ...................................................................................................................14

ii

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Andy Warhol Found. For Visual Arts, Inc. v. Goldsmith*,
  598 U.S. 508 (2023)............................................................5, 11

*Art of Design, Inc. v. Pontoon Boat, LLC*,
  No. 3:16-CV-595-JD-JEM, 2017 WL 5563401 (N.D. Ind. Nov. 17, 2017)............................14

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009).............................................................4

*Authors Guild v. Google, Inc.*,
  804 F.3d 202 (2d Cir. 2015)....................................................12

*Balsley v. L.F.P., Inc.*,
  No. 1:08 CV 491, 2008 WL 11378897 (N.D. Ohio Dec. 2, 2008)............................5

*Balsley v. LFP*,
  691 F.3d 747 (6th Cir. 2012) ..................................................11

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007)............................................................4

*Blehm v. Jacobs*,
  702 F.3d 1193 (10th Cir. 2012) ................................................7

*Campbell v. Acuff–Rose Music, Inc.*,
  510 U.S. 569 (1994)...........................................................10, 12

*Debrew v. Stringer, Case*
  *No.* 2:12-cv-170, 2014 WL 12657149 (S.D. Ohio Nov. 21, 2014) (Watson, J.)......................4

*Erie Cty., Ohio v. Morton Salt, Inc.*,
  702 F.3d 860 (6th Cir. 2012) ..................................................4

*Feist Publ'ns, Inc. v. Rural Telephone Serv. Co.*,
  499 U.S. 340 (1991)...........................................................6, 7, 11

*Gray-El v. Jennifer Lopez/Nuyorican Prods., Inc.*,
  No. 19-10952, 2019 WL 8750506 (E.D. Mich. Dec. 18, 2019) ...............................8

*House of Bryant Publications, LLC v. A & E Television Networks*,
  No. 3:09-0502, 2009 WL 3673055 (M.D. Tenn. Oct. 30, 2009)......................................10, 11

*Johnson v. Apple Inc.*,
Case No. 3:13-cv-204, 2014 WL 4076148 (S.D. Ohio Aug. 14, 2014) ...................................6

*Johnson v. Jones*,
149 F.3d 494 (6th Cir. 1998) ...................................................................................................14

*Johnson v. Moseley*,
790 F.3d 649 (6th Cir. 2015) ......................................................................................................4

*Kohus v. Mariol*,
328 F.3d 848 (6th Cir. 2003) ......................................................................................................7

*Lyles v. Capital-EMI Music Inc.*,
No. 2013 WL 6000991, 2013 WL 6000991 (S.D. Ohio Nov. 12, 2013) ...................................6

*Mayer v. Mylod*,
988 F.2d 635 (6th Cir. 1993) ......................................................................................................4

*Montgomery v. Kraft Foods Glob., Inc.*,
822 F.3d 304 (6th Cir. 2016) ......................................................................................................4

*Nat'l Bus. Dev. Servs., Inc. v. Am. Credit Educ. & Consulting Inc.*,
299 Fed. App'x 509 (6th Cir. 2008) ............................................................................................4

*SnagPod, LLC v. Precision Kiosk Techs., Inc.*,
No. 23-CV-10401, 2023 WL 6644133 (E.D. Mich. Oct. 12, 2023) ......................................6, 7

*SnagPod, LLC v. Precision Kiosk Techs., Inc.*,
No. 23-CV-10401, 2023 WL 8451655 (E.D. Mich. Dec. 6, 2023) ............................................6

*Stromback v. New Line Cinema*,
384 F.3d 283 (6th Cir. 2004) ...............................................................................................7, 8, 9

*Taylor v. Victoria's Secret Stores, Inc.*,
No. 10-2334-JPM-tmp, 2011 WL 13097641 (W.D. Tenn. Sept. 29, 2011) ..............................6

*Terry v. Tyson Farms, Inc.*,
604 F.3d 272 (6th Cir. 2010) ......................................................................................................4

*Twentieth Century Music Corp. v. Aiken*,
422 U.S. 151 (1975)....................................................................................................................5

*Wickham v. Knoxville International Energy Exposition, Inc.*,
739 F.2d 1094 (6th Cir. 1984) ....................................................................................................6

*Zlozower v. Rock & Roll Hall of Fame & Museum, Inc.*,
No. 1:24CV1817, 2025 WL 3134584 (N.D. Ohio Nov. 10, 2025) ............................................9

*Zomba Enters. v. Panorama Recs.*,
   491 F.3d 574 (6th Cir. 2007) ..............................................................................9, 11

**Statutes**

17 U.S.C. § 107...............................................................................................................9

17 U.S.C. §§ 107–122......................................................................................................5

17 U.S.C. § 410(c) ...........................................................................................................7

17 U.S.C. § 412.....................................................................................................1, 13, 14

17 U.S.C. § 507(b) .........................................................................................................13

**Other Authorities**

37 C.F.R. § 202.1(a)........................................................................................................8

Fed. R.Civ. P. 12(b)(6).............................................................................................1, 3, 4

Fed. R. Civ. P. 12(f)........................................................................................................5

v

Plaintiff St. Ignatius High School of Cleveland ("St. Ignatius") filed this copyright infringement lawsuit on February 25, 2026, exactly 2031 days after discovering the alleged infringement and two days after the Cuyahoga County Common Pleas Court telegraphed that it was granting summary judgment in favor of Alexy Metals, Ltd. ("Alexy Metals") in an ill-conceived Lanham Act case St. Ignatius filed in state court in September 2024 (the "State Action"). *See* Request for Judicial Notice ("RFJN") # 1; *id.*, # 2.

This series of lawsuits stems from St. Ignatius' belief that all others should do as they say, not do what they do.  In early 2020, an intern for Alexy Metals, a family owned and operated precious metals refinery business based in Willoughby, Ohio, did exactly what the marketing firm that created the St. Ignatius Shield design did—he brainstormed design ideas by looking at a wide variety of other designs, found elements in those designs that resonated with the company's business and the message it wanted to convey, and transformed those elements into what became the Alexy Metals Shield.  Compl. ¶¶ 4-5, 11.  This follow-on lawsuit, like the State Action, is about a handful of common geometric symbols that St. Ignatius believes it should be able to prevent Alexy Metals from using, even though St. Ignatius' marketing consultant copied the symbols from others and even though the end works are not substantially similar.  Compl. ¶¶ 4-5

St. Ignatius is wrong, again.  The Complaint should be dismissed for failure to state a claim pursuant to Fed. R.Civ. P. 12(b)(6) because: (1) St. Ignatius fails to plausibly allege copyright infringement; (2) Alexy Metals' use is fair use; and (3) the statute of limitations bars St. Ignatius' claim.  Furthermore, St. Ignatius' request for statutory damages and attorneys' fees should be stricken because 17 U.S.C. § 412 bars that recovery when a claimant, like St. Ignatius here, fails to timely register the asserted work.

1

## I.  RELEVANT FACTS

St. Ignatius freely admits that the marketing firm it hired copied elements from Jesuit schools and other third parties in creating the St. Ignatius Shield and the Common Pleas Court agreed.  Compl. ¶¶ 4-5; RFJN # 3, MSJ Order at  5; *id.*, # 4.  St. Ignatius pleads that its copyright is limited to the "unique compilation" of preexisting "Ignatian elements" found in the design ("St. Ignatius Shield").  Compl. ¶ 5.

The differences between the St. Ignatius Shield and the allegedly infringing design ("Alexy Metals Shield") are readily apparent, starting with color schemes and detailing.  The Alexy Metals Shield is conceptually tied to its goods and services through use of metallic colors and detailing in the diagonal stripes and in the bottom section giving it a reflective and burnished 3-D appearance, not to mention the name of the company.  The plus sign in the upper left looks like (and indeed is meant to look like) how the main precious metals sold by the company appear in the Periodic Table of Elements.  RFJN # 5.  By contrast, the dimensionless St. Ignatius design is basic blue and yellow, with a plus sign meant to resemble a cross and diagonal stripes which, along with the wolves over a cauldron, appear on the Oñaz-Loyola family shield and countless Jesuit school crests and seals. *id.*, # 6 ; *id.*, # 3, MSJ Order at 5, 12.  There are additional differences in how elements of the two designs are expressed, including the shape of the shield outline, its borders, the use of shading and the lack of flourishes on the Alexy Metals ribbon element.[1]

---

[1] Because the Complaint does not allege any infringing acts with respect to the earlier 2019 design shown in Paragraph 11 (which was created in 2020, St. Ignatius misstates the timeline), the comparison in this Motion focuses on the 2021 design.

2

 

St. Ignatuis knew about the Alexy Metals Shield by at least August 4, 2021, but it did nothing until May 2024, when it sent a threatening cease and desist letter to the company. RFJN # 7; *id.* # 8. Despite bringing the State Action, St. Ignatius failed to adduce any evidence to support its trademark claims and admitted that there was no likelihood of purchaser confusion. RFJN # 3 MSJ Order at 5-6. On March 6, 2026, the Common Pleas court issued a detailed order granting Alexy Metals' motion for summary judgment in its entirety and denying St. Ignatius' motion for summary judgment in its entirety. *Id.* at 15. In its fifteen-page opinion, the court thoroughly analyzed the arguments, finding in relevant part: 1) the St. Ignatius Shield is a weak mark due to its similarities to other designs and use of common geometric symbols and (2) the two designs are not similar. *Id.* at 5-9.

St. Ignatius appealed that decision on March 26, 2026, almost two weeks early, in an effort to preempt Alexy Metals' motion for attorneys' fees, which it knew Alexy Metals intended to file. RFJN # 9. That appeal is currently on remand to the Common Pleas court for determination of Alexy Metals' motion for sanctions and attorneys' fees. *Id.*

## II. STANDARD OF REVIEW

A Rule 12(b)(6) motion tests whether, as a matter of law, the plaintiff is entitled to legal

3

relief assuming the allegations of the complaint to be true. *Mayer v. Mylod*, 988 F.2d 635, 638 (6th Cir. 1993). To survive a Rule 12(b)(6) motion to dismiss, plaintiffs must plead facts to state a facially plausible claim to relief. *Montgomery v. Kraft Foods Glob., Inc*., 822 F.3d 304, 308 (6th Cir. 2016). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Debrew v. Stringer, Case No.* 2:12-cv-170, 2014 WL 12657149, at *2 (S.D. Ohio Nov. 21, 2014) (Watson, J.) (quoting *Ashcroft*). "[A] naked assertion . . . gets the complaint close to stating a claim, but without some further factual enhancement it stops short of the line between possibility and plausibility," and therefore, "something beyond the mere possibility of relief must be alleged." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555–56 (2007) (internal citations omitted); *Debrew*, 2014 WL 12657149, at *2 (quoting *Twombly*). Because "copyright infringement lends itself readily to abusive litigation, since the high cost of trying such a case can force a defendant who might otherwise be successful in trial to settle in order to avoid the time and expenditure of a resource intensive case . . . greater particularity in pleading, through showing 'plausible grounds', is required." *Nat'l Bus. Dev. Servs., Inc. v. Am. Credit Educ. & Consulting Inc.*, 299 Fed. App'x 509, 512 (6th Cir. 2008).

The Court must draw on its judicial experience and common sense to determine if the facts alleged raise a right to relief above a speculative level. *Erie Cty., Ohio v. Morton Salt, Inc*., 702 F.3d 860, 867 (6th Cir. 2012). The Court "need not accept as true legal conclusions or unwarranted factual inferences." *Terry v. Tyson Farms, Inc*., 604 F.3d 272, 276 (6th Cir. 2010). Labels, conclusions, and a "formulaic recitation" of the elements of a claim will not suffice. *Johnson v. Moseley*, 790 F.3d 649, 652 (6th Cir. 2015).

"[A]n affirmative defense can be raised by pre-answer motion if the facts giving rise to the

4

affirmative defense appear on the face of the complaint." *Balsley v. L.F.P., Inc.*, No. 1:08 CV 491, 2008 WL 11378897, at *3 (N.D. Ohio Dec. 2, 2008), citing *Rauch v. Day & Night Mfg. Corp.*, 576 F.2d 697, 702 (6th Cir. 1978) (defendant permitted to raise statute of limitations affirmative defense by 12(b)(6) motion when the facts of the complaint gave rise to the defense). Furthermore, "an attachment to a motion to dismiss that does not rebut, challenge, or contradict the plaintiff's complaint may be reviewed without converting the motion to dismiss into a motion for summary judgment." *Id.*, citing *Song v. City of Elyria*, 985 F.2d 840, 842 (6th Cir. 1993).

While "[c]reative work is to be encouraged and rewarded, ... private motivation must ultimately serve the cause of promoting broad public availability of literature, music, and other arts." *Andy Warhol Found. For Visual Arts, Inc. v. Goldsmith* ("*Warhol*"), 598 U.S. 508, 526 (2023) (citation omitted). The Copyright Act seeks to balance these "competing claims upon the public interest." *Twentieth Century Music Corp. v. Aiken*, 422 U.S. 151, 156 (1975). The Act "encourages creativity by granting the author of an original work 'a bundle of exclusive rights,'" which "includes the rights to reproduce the copyrighted work, to prepare derivative works, and, in the case of pictorial or graphic works, to display the copyrighted work publicly." *Warhol*, 598 U.S. at 526, quoting *Harper & Row Publishers, Inc. v. Nation Enters.*, 471 U.S. 539, 546 (1985). At the same time, the Act ensures the availability of creative work by limiting the scope of a copyright owner's rights. *See* 17 U.S.C. §§ 107–122.

Under Federal Rule of Civil Procedure 12(f), "[t]he court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter."

### III. ARGUMENT

**A. The Alexy Metals Shield Is Not Substantially Similar to the St. Ignatus Shield.**

To establish a direct copyright infringement claim against Alexy Metals, St. Ignatius must

plead: (1) ownership of a valid copyright; and (2) that Alexy Metals copied constituent elements of the work that were original. *Feist Publ'ns, Inc. v. Rural Telephone Serv. Co.*, 499 U.S. 340, 361 (1991). St. Ignatius has not adequately pled these elements to withstand this motion to dismiss because there is no similarity between any protectable elements, let alone substantial similarity, to support a plausible claim for infringement. *See Wickham v. Knoxville International Energy Exposition, Inc.*, 739 F.2d 1094, 1097 (6th Cir. 1984) ("No amount of proof of access will suffice to show copying if there are no similarities."). The Court need not accept as true any legal conclusions pleaded by St. Ignatius regarding originality or substantial similarity. *See SnagPod, LLC v. Precision Kiosk Techs., Inc.*, No. 23-CV-10401, 2023 WL 8451655, at *2 (E.D. Mich. Dec. 6, 2023), citing *Handy-Clay v. City of Memphis*, 695 F.3d 531, 539 (6th Cir. 2012) (the court "need not accept as true a legal conclusion couched as a factual allegation, or an unwarranted factual inference). Particularly where the works are not technical in nature and made part of the pleadings, a court may decide substantial similarity at the pleadings stage. *See SnagPod, LLC v. Precision Kiosk Techs., Inc.*, No. 23-CV-10401, 2023 WL 6644133, at *5 (E.D. Mich. Oct. 12, 2023); *Johnson v. Apple Inc.*, Case No. 3:13-cv-204, 2014 WL 4076148, *4 (S.D. Ohio Aug. 14, 2014) (granting motion to dismiss because plaintiff's general claims "merely allege[d] infringement of ideas"); *Lyles v. Capital-EMI Music Inc.*, No. 2013 WL 6000991, 2013 WL 6000991, at *4 (S.D. Ohio Nov. 12, 2013) (granting motion to dismiss due to lack of substantial similarity); *Taylor v. Victoria's Secret Stores, Inc.*, No. 10-2334-JPM-tmp, 2011 WL 13097641, at *5 (W.D. Tenn. Sept. 29, 2011) (finding that it is appropriate for a court to dismiss a copyright infringement claim under Rule 12 "if it concludes that the similarities pertain only to unprotected elements of the work").

As for the first element, ownership of a valid copyright, St. Ignatius is not entitled to a presumption that its design is protectable because the work was registered more than five years

following publication. 17 U.S.C. § 410(c); *Snagpod*, 2023 WL 6644133 at *6. RFJN # 10.

In determining the second element, substantial similarity, "[c]opying alone is not infringement. The infringement determination depends on what is copied." *Blehm v. Jacobs*, 702 F.3d 1193, 1208 (10th Cir. 2012) (affirming summary judgment for defendants over "Life is Good" stick figures).

The question of whether a work infringes first requires eliminating the unoriginal elements, such as abstract ideas, elements dictated by efficiency, and *scenes a faire*, as they are unprotected. *See Kohus v. Mariol*, 328 F.3d 848, 853 (6th Cir. 2003) (relying on *Feist*). As explained in *Stromback v. New Line Cinema*, 384 F.3d 283, 296 (6th Cir. 2004):

> [C]opyright protection extends only to expression of ideas and not to ideas themselves. 17 U.S.C. § 102(b); *Mazer v. Stein*, 347 U.S. 201, 217, 74 S.Ct. 460, 470, 98 L.Ed. 630 (1954) ("Unlike a patent, a copyright gives no exclusive right to the art disclosed; protection is given only to the expression of the idea—not the idea itself."). "Ideas are free to the world, and one person's idea can be appropriated by another with impunity." *Taylor v. Metro-Goldwyn-Mayer Studios*, 115 F. Supp. 156, 157 (S.D.Cal.1953). "[N]o author may copyright facts or ideas. The copyright is limited to those aspects of the work—termed 'expression'— that display the stamp of the author's originality." *Feist Publ'ns*, 499 U.S. at 350, 111 S.Ct. at 1290 (quoting *Harper & Row, Publishers, Inc. v. Nation Enters.*, 471 U.S. 539, 547, 105 S.Ct. 2218, 2224, 85 L.Ed.2d 588 (1985)) (internal quotation marks omitted).

Then, the Court considers "whether the allegedly infringing work is substantially similar to the protectable elements of the original." *Kohus*, 328 F.3d at 853. The Court analyzes this question from the intended audience's point of view. *Id.* at 857. Where designs are similar only as to unprotectable elements, there can be no copyright infringement as a matter of law. *See Stromback*, 384 F.3d at 297. "Substantial similarity exists where the accused work is so similar to the plaintiff's work that an ordinary reasonable person would conclude that the defendant unlawfully appropriated the plaintiff's protectable [sic] expression by taking ***material of substance***

*and value*." *Id.* (internal quotation omitted) (emphasis added).

The St. Ignatius Shield contains many elements, including a plus sign, shield outline, and diagonal stripes, that are not entitled to protection by themselves (indeed, the Court can access the same shapes through Microsoft stock images).  Copyright protection does not extend to "[w]ords and short phrases such as names, titles, and slogans [and] familiar symbols or designs."  37 C.F.R. § 202.1(a).  St. Ignatius admits that any rights it possesses are in the nature of a compilation. Compl. ¶ 5. And the Alexy Metals Shield contains many expressive elements, including the AM pyramid logo, color scheme, shading, borders, and wording, that are not found in the St. Ignatius Shield.  *See Gray-El v. Jennifer Lopez/Nuyorican Prods., Inc.*, No. 19-10952, 2019 WL 8750506, at *13 (E.D. Mich. Dec. 18, 2019), *report and recommendation adopted sub nom. Gray-El v. Lopez*, No. 19-CV-10952, 2020 WL 1060642 (E.D. Mich. Mar. 5, 2020) ("[B]oth shows contain similarities, but these similarities exist in elements that are not protectable, or the similarities are simply unprotectable ideas. And, to the extent those similarities are copyrightable elements, Let's Start the Dance contains many elements not found in World of Dance, and World of Dance contains elements not found in Let's Start the Dance.").

The Common Pleas court found, based on admissions by St. Ignatius:

> Plaintiff admits that the shield shape is a pretty common enclosure. Plaintiff also admits that diagonal stripes on a shield design are not unique to St. Ignatius. Plaintiff further admits that the iconography used inside the shield is "Ignatian symbols" that are in most of the main identities in some way or another. The shield, stripes, AMDG, cross, wolves over a cauldron, and date of establishment are neither unique nor unusual in the field of education, particularly Jesuit education. Stylized shields are common ornamentation on goods from clothes to cars.

RFJN # 3, MSJ Order at 5, *see also id*. at 12.

Here, when the stock nature of the individual design elements that St. Ignatius itself copied

from others are taken into account, the manner in which the Alexy Metals Shield is *expressed* is not sufficiently similar to any protectable expression in the compilation of basic shapes in the St. Ignatius Shield such that "an ordinary reasonable person" would conclude that Alexy Metals "unlawfully appropriated the plaintiff's protectable expression by taking **material of substance and value**." *Stromback,* 384 F.3d at 297 (emphasis added).

Accordingly, the Court should dismiss St. Ignatius' copyright infringement claim against Alexy Metals with prejudice because the Alexy Metals Shield shares no "material of substance and value" with the St. Ignatius Shield.

**B.      Alexy Metals' Use Is Fair Use**

"The purpose of the fair-use doctrine is to ensure that courts 'avoid rigid application of the copyright statute when, on occasion, it would stifle the very creativity which that law is designed to foster.'" *Zomba Enters. v. Panorama Recs.*, 491 F.3d 574, 581 (6th Cir. 2007), quoting *Princeton Univ. Press v. Mich. Document Servs.*, 99 F.3d 1381, 1385 (6th Cir. 1996).

The four factors examined under 17 U.S.C. § 107 include:

> (1) the purpose and character of the use, including whether such use is of a commercial nature or is for nonprofit educational purposes;
>
> (2) the nature of the copyrighted work;
>
> (3) the amount and substantiality of the portion used in relation to the copyrighted work as a whole; and
>
> (4) the effect of the use upon the potential market for or value of the copyrighted work.

"[A]n affirmative defense of fair use can be considered at the motion to dismiss stage." *Zlozower v. Rock & Roll Hall of Fame & Museum, Inc.*, No. 1:24CV1817, 2025 WL 3134584, at *3 (N.D. Ohio Nov. 10, 2025) (granting motion to dismiss based on fair use of photo in museum display).

9

***First Factor***:  In considering whether a work is "transformative," the court should explore whether the new work "merely supersedes the objects of the original creation or instead adds something new, with a further purpose or different character, altering the first with new expression, meaning or message." *Campbell v. Acuff–Rose Music, Inc*., 510 U.S. 569, 579 (1994) (internal citation and quotation omitted).  "[G]iven that much of the creative work performed in this country is done for commercial purposes, this second point tends to take on less significance, especially when the new work is highly transformative." *House of Bryant Publications, LLC v. A & E Television Networks*, No. 3:09-0502, 2009 WL 3673055, at *5 (M.D. Tenn. Oct. 30, 2009), citing *Zomba Enters*., 491 F.3d at 582. *See Campbell*, 510 U.S. at 579 ("[T]he more transformative the new work, the less will be the significance of other factors, like commercialism, that may weigh against a finding of fair use").  A transformative use is one that "alter[s] the first [work] with new expression, meaning, or message." *Id*.

Here, Alexy Metals' expression adds new meaning and is transformative.  Overall, the color scheme, wording, and drawing details added to the Alexy Metals Shield convey a different message than the St. Ignatius Shield—the Alexy Metals Shield is made of metal and related to a metals company, not a flat school crest.  And the meanings of the common geometric symbols are similarly transformed.  For example, the plus sign serves as the commonly found AMDG cross in the St. Ignatius Shield.  RFJN # 11. In the Alexy Metals Shield, it is the periodic table of elements. *Id*. .  The blue and yellow diagonal stripes copied from the Oñaz-Loyola family shield in the St. Ignatius Shield turn into gold and bronze stripes that are highlighted to add a metallic sheen that ties directly into the Alexy Metals name. *Id*., # 6.  The shield shape is commonly used for both school crests and logos. *Id*., # 12.  In the Alexy Metals Shield, it is a metal shield symbolizing Alexy Metals' precious metal products.  Alexy Metals uses common geometric symbols in a

10

manner that transforms the meaning of the symbols to something different from what they represent in the St. Ignatius Shield.  Thus, instead of a school crest, viewers see a logo for a metals company.  *Andy Warhol Found. for the Visual Arts, Inc.*, 598 U.S. at 539 (distinguishing between Warhol's soup can prints and "[t]he purpose of Campbell's logo is to advertise soup.").  Accordingly, this factor weighs in favor of fair use.

**Second Factor**:  "Courts . . . consider[ ] two aspects of the work in evaluating this factor: first, the extent to which it is a creative work enjoying broader copyright protection as opposed to a factual work requiring broader dissemination, and second, whether it is unpublished, in which case the right of first publication is implicated."  *Balsley v. LFP*, 691 F.3d 747, 759 (6th Cir. 2012), quoting *Nunez v. Caribbean Int'l News*, 235 F.3d 18, 23 (1st Cir. 2000).  Here, the right of first publication is not implicated, as St. Ignatius allegedly published the design in 2014.  RFJN # 10.  St. Ignatius admits that its rights lie in the nature of a compilation.  Compl. ¶ 5.  The St. Ignatius Shield, due to its copying and incorporation of basic "Ignatian elements" (*see* Compl. ¶¶ 4-5) and utilitarian need to ensure "its ability to be reduced and enlarged in size, and reproducibility" (*id*. ¶ 7) is more in the nature of a factual compilation than anything else.  The protection afforded factual compilations is "thin."  *Feist Publications, Inc.*, 499 U.S. at 349. Accordingly, this factor weighs in favor of finding fair use as well.

**Third Factor**:  "This factor focuses on the amount of the allegedly infringed work ... that was taken by the alleged infringer."  *House of Bryant Publ'ns*, 2009 WL 3673055, at *7, citing *Zomba Enters*., 491 F.3d at 583.  "[T]he larger the volume...of what is taken, the greater the affront to the interests of the copyright owner, and the less likely that a taking will qualify as a fair use."  *Zomba Enters*., 491 F.3d at 583, citing *Princeton Univ. Press*, 99 F.3d at 1389.  The Court "asks whether 'the amount and substantiality of the portion used in relation to the copyrighted work as

11

a whole'. . . . are reasonable in relation to the purpose of the copying. *Campbell v. Acuff-Rose Music, Inc.*, 510 U.S. 569, 586 (1994), quoting 17 U.S.C. § 107(3). Here, the Alexy Metals Shield uses an entirely different color scheme, different wording and drawing effects, and adds elemental symbols for precious metals and the Alexy Metals AM pyramid logo. The Alexy Metals Shield does not use the wolves over a cauldron image, the name SAINT IGNATIUS, or the letters AMDG, and does not use the exact same shield shape or ribbon shape. When the uncommon elements are stripped from the St. Ignatius Shield compilation, what is left is just a basic shield shape with diagonal stripes, a ribbon across the middle, and a plus sign in the upper left. These elements do not represent the "heart" of the work, which resides in the compilation as a whole, including name "Saint Ignatius," the school colors, the initials AMDG, and the wolves over a cauldron. This factor weighs heavily in favor of finding fair use.

*Fourth Factor*: The analysis of the fourth factor involves whether Alexy Metals brought to the marketplace a competing substitute for the St. Ignatius Shield or its derivative so as to deprive St. Ignatius of revenues "because of the likelihood that potential purchasers may opt to acquire the copy in preference to the original." *Authors Guild v. Google, Inc.*, 804 F.3d 202, 222 (2d Cir. 2015). The impact on the copyright owner's actual or potential market must be significant and substantial. *Id*. at 224. There is no world in which the logo for a metals company is a market substitute for a private school crest, as the Common Pleas Court recognized in its summary judgment. RFJN # 13. This factor, too, weighs strongly in favor of finding fair use.

Considering all four factors, the Court should determine that the Alexy Metals Shield is fair use as a matter of law.

**C.     St. Ignatius's Claim Is Barred by the Statute of Limitations**

No party can maintain a civil action under Title 17 "unless it is commenced within three

years after the claim accrued." 17 U.S.C. § 507(b).

St. Ignatius alleges the Alexy Metals Shield was created in 2019 and revised in 2021. Compl. ¶¶ 11-12. It alleges no infringing acts in the years since then. In the state action, St. Ignatius conceded it first learned of the alleged infringement at least as early as August 4, 2021. RFJN # 7. St. Ignatius filed this lawsuit on February 25, 2026, more than five and a half years after the last alleged act of infringement. Accordingly, St. Ignatius' copyright claim is barred as a matter of law.

**D.     Alternatively, the Court Should Strike St. Ignatius' Claim for Statutory Damages and Attorneys' Fees**

"[N]o award of statutory damages or of attorney's fees . . . shall be made for . . . . any infringement of copyright commenced after first publication of the work and before the effective date of its registration, unless such registration is made within three months after the first publication of the work." 17 U.S.C. § 412.

St. Ignatius published the asserted design in 2014 but did not register it until April 29, 2025. RFJN # 10. The Complaint alleges that infringement commenced in 2019 and 2021. Compl. ¶¶ 11-12.

Sixth Circuit law on this point is clear:

> [I]nfringement "commences" for the purposes of § 412 when the first act in a series of acts constituting continuing infringement occurs. *See, e.g., Ez–Tixz, Inc. v. Hit–Tix, Inc.*, 919 F.Supp. 728, 736 (S.D.N.Y.1996) ("The alleged acts of infringement that occurred after the copyright was registered do not constitute new acts of infringement but a continuation of the infringement that 'commenced' prior to registration."); *Parfums Givenchy, Inc. v. C & C Beauty Sales, Inc.*, 832 F. Supp. 1378, 1393 (C.D.Cal.1993) (holding that "the first act of infringement in a series of ongoing separate infringements 'commence[s]' one continuing 'infringement' ") (brackets in original); *Mason v. Montgomery Data, Inc.*, 741 F. Supp. 1282, 1285 (S.D.Tex.1990), *rev'd* on other grounds, 967 F.2d 135 (5th Cir.1992) ( "A 'new' or 'separate' basis

13

for the award of statutory damages is created, however, only where there is a difference between pre– and post-registration infringing activities."); *Singh v. Famous Overseas, Inc.*, 680 F. Supp. 533, 535 (E.D.N.Y.1988), *aff'd*, 923 F.2d 845 (2d Cir.1990) (holding that infringement does not "commence" with each new act in an ongoing infringement, because "it would be peculiar if not inaccurate to use the word 'commenced' to describe a single act"); *Johnson v. Univ. of Virginia*, 606 F. Supp. 321, 325 (D.Va.1985) (holding that infringement does not "commence" with each new act in an ongoing infringement, because "ascribing such a meaning to the term 'commenced' would totally emasculate § 412"); *Whelan Associates, Inc. v. Jaslow Dental Laboratory, Inc.*, 609 F. Supp. 1325, 1331 (E.D.Pa.1985), aff'd on other grounds, 797 F.2d 1222 (3d Cir.1986), cert. denied, 479 U.S. 1031, 107 S.Ct. 877, 93 L.Ed.2d 831 (1987) ("Interpreting 'commencement of infringement' as the time when the first act of infringement in a series of ongoing discrete infringements occurs ... would best promote the early registration of a copyright. It would strongly encourage prompt registration.").

*Johnson v. Jones*, 149 F.3d 494, 506 (6th Cir. 1998). *See also Art of Design, Inc. v. Pontoon Boat, LLC*, No. 3:16-CV-595-JD-JEM, 2017 WL 5563401, at *2 (N.D. Ind. Nov. 17, 2017) (granting motion to strike, "The limitation on statutory damages imposed by § 412 is not discretionary."), citing *Johnson v. Jones*, 149 F.3d at 506. Striking the irrelevant allegations will expedite the case and, conversely, not striking the allegations would prejudice Alexy Metals because St. Ignatius' hope to obtain attorneys' fees encourages litigation. *See id*. at *1.

St. Ignatius' allegations regarding statutory damages (Para. 19 and Prayer for Relief, C.) and attorneys' fees (Prayer for Relief, D.) are "immaterial" and "impertinent" because St. Ignatius is unequivocally statutorily barred from receiving that relief, and the Court should strike the allegations from the Complaint.

## IV. CONCLUSION

For the foregoing reasons, Alexy Metals respectfully requests that the Court dismiss the Complaint with prejudice or, alternatively, strike Paragraph 19 and sections C and D of the Prayer for Relief.

14

Date: May 4, 2026                                  Respectfully submitted,


                                                   /s/ Christina J. Moser
                                                   Christina J. Moser, #0074817
                                                   cmoser@bakerlaw.com
                                                   Melissa M. Bilancini, #98510
                                                   mbilancini@bakerlaw.com
                                                   Baker & Hostetler LLP
                                                   Key Tower
                                                   127 Public Square, Suite 2000
                                                   Cleveland, OH 44114
                                                   Telephone:    216.621.0200
                                                   Facsimile:    216.696.0740
                                                   Attorneys for Defendant Alexy Metals, Ltd.

15

## CERTIFICATE OF SERVICE

I hereby certify that on May 4, 2026, a copy of the foregoing Motion to Dismiss Plaintiff St. Ignatius High School of Cleveland's Complaint was filed electronically.  Notice of this filing will be sent to all parties by operation of the Court's electronic filing system.  Parties may access this filing through the Court's system.

/s/ Christina J. Moser
Christina J. Moser, #0074817
cmoser@bakerlaw.com
Melissa M. Bilancini, #98510
mbilancini@bakerlaw.com
Baker & Hostetler LLP
Key Tower
127 Public Square, Suite 2000
Cleveland, OH 44114
Telephone:*   216.621.0200
Facsimile:     216.696.0740
Attorneys for Defendant Alexy Metals, Ltd.