**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | |
|---|---|
| ST. IGNATIUS HIGH SCHOOL OF CLEVELAND, | CASE NO. 1:26-cv-474 |
| Plaintiff, | JUDGE POLSTER |
| v. | |
| ALEXY METALS, LTD., | |
| Defendant. | |

**PLAINTIFF ST. IGNATIUS HIGH SCHOOL OF CLEVELAND'S MEMORANDIUM IN OPPOSITION TO ALEXY METALS, LTD.'S MOTION TO DISMISS OR ALTERNATIVELY, STRIKE ALLEGATIONS**

i

**TABLE OF CONTENTS AND SUMMARY OF THE ARGUMENT**

TABLE OF CONTENTS AND SUMMARY OF THE ARGUMENT...........................................ii

TABLE OF AUTHORITIES ...........................................................................................................iii

STATEMENT OF THE ISSUES..................................................................................................... 1

INTRODUCTION ........................................................................................................................... 2

RELEVANT FACTUAL BACKGROUND..................................................................................... 3

STANDARD..................................................................................................................................... 5

DISCUSSION .................................................................................................................................. 7

A.   St. Ignatius has Properly Pled Its Copyright Infringement Claim ..................................... 7

St. Ignatius has properly pled in its Complaint the elements of copyright infringement, including that it owns a valid copyright registration over the St. Ignatius Shield, that Alexy Metals directly copied the St. Ignatius Shield when Alexy Metals created the Alexy Shield, that Alexy Metals had access to the St. Ignatius Shield when it created the Alexy Shield, and that the St. Ignatius Shield and Alexy Shield are substantially similar. Taking St. Ignatius' allegations as true, it has pled a claim for copyright infringement.

B.   Alexy Metals' Use of the Alexy Shield is Not Fair Use................................................... 12

Alexy Metals has failed to carry its burden to prove that its use of the Alexy Shield is fair use because Alexy Metals uses the Alexy Shield for commercial purposes, uses the Alexy Shield in a non-transformative manner, copied and incorporated into the Alexy Shield the exact elements of the St. Ignatius Shield that make the St. Ignatius Shield creative and unique, and has failed to rebut the presumption of market harm for St. Ignatius and potentially caused market harm.

C.   St. Ignatius' Claim is Not Barred by the Statute of Limitations ...................................... 16

St. Ignatius' copyright infringement claim is not time-barred because of Alexy Metals' continued use to this day of the Alexy Shield.

D.   St. Ignatius is Entitled to Actual Damages. ..................................................................... 16

St. Ignatius is entitled to prove its actual damages caused by Alexy Metals' copyright infringement.

E.   The State Court Decision Has No Effect on This Case. .................................................... 17

The state court decision as no effect on this case because it is not *res judicata* in this case.

CONCLUSION................................................................................................................................ 20

CERTIFICATE OF SERVICE ...................................................................................................... 21

CERTIFICATE OF COMPLIANCE WITH PAGE LIMITATION ............................................. 21

## TABLE OF AUTHORITIES

**Cases**

*Andy Warhol Found. For the Visual Arts, Inc. v. Goldsmith*, 598 U.S. 508, 539 (2023)............. 14

*Antony v. Buena VISTA Books, Inc.,* No. 18-205-DLB-CJS, 2021 U.S. Dist. LEXIS 257389, * 10–11 (E.D. Ky. Sep. 29, 2021)................................................................................. 8, 9

*Balsley v. LFP, Inc.*, No. 1:08 CV 491, 2010 U.S. Dist. LEXIS 152034, * 7 (N.D. Ohio Jan. 26, 2010) ................................................................................................................. 13, 14

*Bedford Auto Dealers Assn. v. Mercedes Benz of N. Olmsted,* 2012-Ohio-927, ¶ 12 (8th Dist.). 18

*Blehm v. Jacobs*, 702 F.3d 1193 (10th Cir.2012) ..................................................................... 9

*Budish v. Gordon*, 784 F. Supp. 1320, 1334 (N.D. Ohio 1992) ....................................... 10, 13, 20

*Calibrated Success, Inc. v. Charters*, 72 F. Supp. 3d 763, 772 (E.D. Mich. 2014)................ 15, 16

*Campbell v. Acuff-Rose Music, Inc.*, 510 U.S. 569, 590 (1994)............................................. 13, 15

*Daddy's Junky Music Stores, Inc. v. Big Daddy's Family Music Ctr.*, 109 F.3d 275, 288 (6th Cir.1997) ....................................................................................................................... 18

*Design Basics*, 2012 U.S. Dist. LEXIS 135387, at *18-19 ....................................................... 10

*Design Basics, L.L.C. v. DeShano Cos., Inc.*, E.D. Mich. No. 10-14419, 2012 U.S. Dist. LEXIS 135387, at *19-20 (Sep. 21, 2012)..................................................................................... 9

*Enchant Christmas Light Maze & Mkt. v. Glowco*, LLC, 958 F.3d 532, 538–39 (6th Cir. 2020) 10

*Faessler v. United States Playing Card Co.*, 2007 U.S. Dist. LEXIS 12767, * 28 (S.D. Ohio Feb. 9, 2007) ........................................................................................................................ 20

*Feist Publications, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 361 (1991)) ................................. 7

*Goettle*, 2010 U.S. Dist. LEXIS 131944, at * 11–13 ................................................................ 9

*Gray-El v. Jennifer Lopez/Nuyorican Prods.*, No. 19-10952, 2019 U.S. Dist. LEXIS 230908, * 2 (E.D. Mich. Dec. 18, 2019)........................................................................................... 9

*Harper & Row, Publrs v. Nation Enters.*, 471 U.S. 539, 549 (1985) ......................................... 13

*Hayden v. 2K Games, Inc.*, 629 F. Supp. 3d 736, 744 (N.D. Ohio 2022).................................. 6, 7

*Images Audio Visual Prods. v. Perini Bldg. Co.*, 91 F. Supp. 2d 1075, 1085 (E.D. Mich. 2000) 15

*In Lux Rsch. v. Hull McGuire PC*, No. 23-523 (JEB), 2024 U.S. Dist. LEXIS 31848, at *9 (D.D.C. Feb. 26, 2024) ..................................................................................................... 13

*Jet, Inc. v. Sewage Aeration Sys.*, 165 F.3d 419, 424 (6th Cir.1999) ........................................ 19

*Kohus v. Mariol*, 328 F.3d 848, 853–54 (6th Cir. 2003) ........................................................... 8

*Lyles v. Capital - EMI Music, Inc.*, S.D. Ohio No. 2:12-CV-00751, 2013 U.S. Dist. LEXIS 161137 (Nov. 12, 2013) ..................................................................................................... 9

*Lyons v. Gillette*, 882 F.Supp.2d 217, 232–233 (D. Mass. 2012)............................................... 18

*Nat'l Bus. Dev. Servs. v. Am. Credit Educ. & Consulting, Inc.,* 299 F. App'x 509, 512 (6th Cir. 2008) ............................................................................................................................. 6

*NOCO Co. v. Shenzhen Dingjiang Technology Co.,* N.D.Ohio No. 1:21-cv-1483, 2022 U.S. Dist. LEXIS 3911, * 4 (Jan. 7, 2022) .......................................................................................... 6, 7

*Pan v. Kohl's Dep't Stores, Inc.*, 2013 U.S. Dist. LEXIS 130616 (S.D. Ohio)............................ 10

*Pay(q)r, LLC v. Sibble*, N.D. Ohio No. 5:15cv1038, 2015 U.S. Dist. LEXIS 173465, * 32 (Dec. 31, 2015) ......................................................................................................................... 9

*Princeton Univ. Press v. Mich. Document Servs.*, 99 F.3d 1381, 1389 (6th Cir. 1996).............. 15

*Remark Home Designs, Ltd. Liab. Co. v. Oak St. Condo Projects, Ltd. Liab. Co.*, No. 16-cv-14305, 2017 LX 59976, * 9 (E.D. Mich. Aug. 1, 2017)...................................................... 17

*Richard Goettle, Inc. v. Burgess & Niple, Inc.*, No. 1:10-cv-187, 2010 U.S. Dist. LEXIS 131944, * 11–13 (S.D. Ohio Dec. 14, 2010) ................................................................................ 6

*Roger Miller Music, Inc. v. Sony/ATV Publ'g, LLC*, 477 F.3d 383, 390 (6th Cir. 2007) ............. 16

*Scotts Co. LLC v. SBM Life Sci. Corp.*, 749 F. Supp. 3d 865, 880 (S.D. Ohio 2024) .................. 10

*Sophia Parker Studios, Inc. v. Temperley*, N.D. Ohio No. 1:24cv2086, 2025 U.S. Dist. LEXIS 231267, * 63–64 (Nov. 25, 2025) ....................................................................................... 9

*Stark v. Gov't Accounting Sols., Inc.*, No. 2:07-cv-755, 2009 U.S. Dist. LEXIS 17895, * 3 (S.D. Ohio Mar. 9, 2009) ....................................................................................... 17, 18

*Stromback v. New Line Cinema*, 384 F.3d 283, 293 (6th Cir. 1996) ........................................... 10

*Tracy v. Skate Key, Inc.*, 697 F. Supp. 748, 750-51 (S.D.N.Y. 1988) ......................................... 19

*WH Midwest, LLC v. A.D. Baker Homes, Inc.,* S.D. Ohio No. 2:18-cv-1387, 2019 U.S. Dist. LEXIS 163108, * 9 (Sep. 24, 2019) ....................................................................................... 9

*Worth Beauty LLC v. Allstar Prods. Group, LLC,* 2017 U.S. Dist. LEXIS 187392, * 29 (S.D. Tex Nov. 13, 2017) ....................................................................................... 19

**Statutes**

15 U.S.C § 1125(a) .......................................................................................................... 18
17 U.S.C. § 412 ................................................................................................................ 16
28 U.S.C. § 1738 .............................................................................................................. 17
Lanham Act under 15 U.S.C. § 1125(a) .......................................................................... 17
O.R.C. § 4165.02(A)(3) ................................................................................................... 18

**Rules**

Fed.R.Civ.P. 12(b)(6) .................................................................................................... 5, 6

**STATEMENT OF THE ISSUES**

1.   Whether Plaintiff St. Ignatius High School of Cleveland has properly pled a claim for copyright infringement when it alleged (1) ownership of a registered copyright in the St. Ignatius Shield, (2) facts of direct copying of the St. Ignatius Shield by Alexy Metals, (3) that Alexy Metals had access to the St. Ignatius Shield when it created the Alexy Shield, and (4) that the St. Ignatius Shield and Alexy Shield are substantially similar?

2.   Whether Alexy Metals has carried its burden to prove that its use of the Alexy Shield is fair use despite (1) using the Alexy Shield for commercial purposes, (2) using the Alexy Shield in a non-transformative manner because its use and purpose are the same as St. Ignatius' use and purposes of the St. Ignatius Shield, (3) copying and incorporating into the Alexy Shield the exact elements of the St. Ignatius Shield that make the St. Ignatius Shield creative and unique, (4) a (unrebutted) presumption of market harm, and (5) market harm?

3.   Whether St. Ignatius' copyright infringement claim is time-barred despite Alexy Metals' continued use to this day of the Alexy Shield?

4.   What types of damages are St. Ignatius is entitled to due to Alexy Metals' infringement of St. Ignatius' copyright in the St. Ignatius Shield?

5.   What effect, if any, does the state court decision have on this case despite that the state court case and this case deal with different legal theories and different application of facts to those legal theories?

1

## **INTRODUCTION**

Plaintiff St. Ignatius High School of Cleveland's ("St. Ignatius") Complaint pleads the necessary elements for a copyright infringement claim against Defendant Alexy Metals, Ltd. ("Alexy Metals"). St. Ignatius' Complaint alleges that it owns a valid copyright for the St. Ignatius Shield; that Alexy Metals had access to the to St. Ignatius Shield when it created its infringing work, the Alexy Shield; and that the two works are substantially similar. (Doc. 1, Compl., ¶¶ 9, 11, 13). St. Ignatius' Complaint describes the extensive and lengthy process that TWIST Creative, Inc. ("TWIST"), the entity hired to create the St. Ignatius Shield, took in creating the St. Ignatius Shield and the creative and artistic decisions it made. (Doc. 1, Compl., ¶¶ 2–8).

The Complaint further describes how Alexy Metals, after reviewing the St. Ignatius Shield, created a similar work for use on its website and on various promotional items to advertise its goods and services. (*Id.* at ¶ 11–12, 15). These well-pled facts far exceed the "plausibility" requirement to state a claim for copyright infringement. Accordingly, the Motion to Dismiss should be denied.

Likely recognizing that St. Ignatius properly pled a copyright infringement claim, Alexy Metals attempts to upend the motion to dismiss standard by introducing documents outside the pleadings from a state court case based on trademark, not copyright law. Alexy Metals also asks this Court to ignore the essential elements of creativity present in the St. Ignatius Shield that Alexy Metals copied and then summarily find in a motion to dismiss that the two works are not similar. This not only improper at this stage but also wrong.

Despite Alexy Metals having the burden of proof on its fair use argument, and despite not being able to carry that burden, Alexy improperly asks the Court resolve fair use in its favor at the motion to dismiss stage.

2

Finally, copyright law and trademark law are designed to protect very different intellectual property rights. A state court's decision addressing trademark claims is not relevant to a federal court's evaluation of a copyright claim.

## RELEVANT FACTUAL BACKGROUND

In 2012, St. Ignatius engaged TWIST to create a slate of new images and visual works that would represent the school to the wider community. (Doc. 1, Compl., ¶ 2). To create these new images, TWIST conducted a multi-step process that started with a discovery phase where TWIST met with multiple St. Ignatius stakeholders, such as the school's religious leadership, teaching staff, alumni, parents, administration, and students, to understand the unique historical values of St. Ignatius to incorporate into the new images. (*Id.* at ¶ 3). TWIST also considered messages and images related to the school that would attract individuals in St. Ignatius' target demographic and incorporated them into new visual works. (*Id.*).

After gathering this information, TWIST began to sketch different designs that included different shapes and Ignatian elements. (*Id.* at ¶ 4). Before arriving at the final form of the new images, TWIST experimented with dozens of iterations in a variety of different shapes that included an assortment of images arranged in different ways. (*Id.*). TWIST considered and incorporated principles into the work such as the balance of the elements, its symmetry, its ability to be reduced and enlarged in size, and reproducibility. (*Id.* at ¶¶ 4, 7). TWIST also considered and incorporated alternative shapes, line art, common Ignatian elements, and positioned these elements within the new images in unique ways. (*Id.* at ¶¶ 5, 7–8). TWIST engaged in an enormous amount of refinement to compose the visual works—in creating these works, TWIST did not use clip-art but instead created original works of art that were hand drawn and then entered them into a computer via vector art, which is print-ready digital artwork. (*Id.* at ¶ 6). This iterative process,

3

artistic decisionmaking, and creativity ultimately culminated in the St. Ignatius Shield, pictured below:



(*Id.* at ¶¶ 2, 8). On April 29, 2025, St. Ignatius registered the St. Ignatius Shield with the United States Copyright Office, Registration Number VA 2-479-195. (*Id.* at ¶ 9).

St. Ignatius made extensive use of the St. Ignatius Shield beginning in 2013, including on athletic apparel and gear. When Alexy Metals wanted to develop a new trademark for its goods and services, Grayson Alexy, the owner of Alexy Metals, directed a then-intern with Alexy Metals to develop a new mark. (*Id.*). The then-intern showed Mr. Alexy a hockey puck bearing the St. Ignatius Shield and suggested that Alexy Metals develop a similar design—Mr. Alexy agreed. (*Id.*). The then-intern used the St. Ignatius Shield to create a new logo for Alexy Metals. (*Id.*). This new logo was strikingly similar to the St. Ignatius Shield:



4

(*Id.*). A few years later, Alexy Metals decided to make "minor changes" to the above-logo, which resulted in the Alexy Shield that Alexy Metals uses to this day on its website, pictured below compared to the St. Ignatus Shield:



(*Id.* at ¶ 12). Alexy has also used the Alexy Shield on various promotional items such as shirts, hats, and golf balls to advertise its goods and services. (*Id.* at ¶ 15). Despite knowing that St. Ignatius registered and owns a copyright on the St. Ignatius Shield, Alexy Metals continues to use the Alexy Shield. (*Id.* at ¶ 17). St. Ignatius brought its Complaint to protect its copyright in the St. Ignatius Shield.

On September 11, 2024, after first asking Alexy Metals to change its mark, St. Ignatius filed a state court complaint against Alexy Metal alleging various claims under state and federal trademark law and under Ohio's Deceptive Trade Practices Act. On March 3, 2026, the Common Pleas Court entered summary judgment in favor of Alexy Metals on those claims.  St. Ignatius appealed that decision, although the appeal is currently stayed pending further proceedings in the state court.

## STANDARD

A court reviewing a motion to dismiss under Fed.R.Civ.P. 12(b)(6) "must accept as true all well-pleaded allegations and draw all reasonable inferences in favor of the non-moving party."

*NOCO Co. v. Shenzhen Dingjiang Technology Co.,* N.D.Ohio No. 1:21-cv-1483, 2022 U.S. Dist. LEXIS 3911, * 4 (Jan. 7, 2022) (Polster, J.). A complaint only needs to include "enough facts to state a claim to relief that is plausible on its face" and must allege facts to show "more than a sheer possibility that a Defendant has acted unlawfully." *Id.*

The normal standard under Fed.R.Civ.P. 12(b)(6), as articulated in *Twombly* and *Iqbal*, applies to copyright infringement claims. *See Id.* at * 4 (applying normal motion to dismiss standard for copyright infringement claim); *Richard Goettle, Inc. v. Burgess & Niple, Inc.*, No. 1:10-cv-187, 2010 U.S. Dist. LEXIS 131944, * 11–13 (S.D. Ohio Dec. 14, 2010) ("heightened pleading standard is inapplicable" to copyright claim).[1]

Additionally, a court can "consider the complaint and any exhibits attached thereto, public records, items appearing in the record of the case and exhibits attached to defendant's motion to dismiss so long as they are referred to in the complaint and are central to the claims contained therein." *Hayden v. 2K Games, Inc.*, 629 F. Supp. 3d 736, 744 (N.D. Ohio 2022). Alexy Metals, however, references a voluminous number of documents not attached to the complaint, not in the record of this case, not referenced in the complaint, and not central to St. Ignatius' copyright claim. Those documents should be disregarded for purposes of this motion.[2]

Because St. Ignatius' Complaint easily exceeds the applicable pleading requirements, the Court should deny Alexy Metals' Motion to Dismiss.

---

[1] Alexy Metals cites to *Nat'l Bus. Dev. Servs. v. Am. Credit Educ. & Consulting, Inc.,* 299 F. App'x 509, 512 (6th Cir. 2008) but that case simply applied the pleading standard set forth in *Twombly*, not a separate heightened standard. *Id.* The plaintiff in that case failed to even identify what work produced by defendants infringed upon plaintiff's copyrighted work. It is, therefore, inapplicable here. *Id.*

[2] St. Ignatius adopts and incorporates its Brief in Opposition to Alexy Metals' Request for Judicial Notice, as it more thoroughly explains why Alexy Metals' attachments should not be considered or severely limited.

## **DISCUSSION**

### **A.      St. Ignatius has Properly Pled Its Copyright Infringement Claim.**

For a copyright infringement claim, a plaintiff must plead: "(1) ownership of a valid copyright, and (2) 'copying of constituent elements of the work that are original.'" *NOCO*, 2022 U.S. Dist. LEXIS 3911, at * 4 (*quoting Feist Publications, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 361 (1991)).

St. Ignatius has properly pled the first element. In its Complaint, St. Ignatius alleges that "[t]he Work is an original work of visual art. The Work is also a work for hire pursuant to TWIST's contract with St. Ignatius. St. Ignatius is the owner of the copyright in the Work." (Doc. 1, Compl., at ¶ 8). St. Ignatius also alleged the extensive steps and original creativity that TWIST used to create the St. Ignatius Shield. Finally, St. Ignatius alleges that "[e]ffective April 29, 2025, St. Ignatius registered the Work with the United States Copyright Office, Registration Number VA 2-479-195." (*Id.* at ¶ 9). Taking these allegations as true, as this Court must at this stage, St. Ignatius has pled ownership of a valid copyright in the St. Ignatius Shield.

Indeed, Alexy's Motion does not contest that St. Ignatius owns a copyright in the St. Ignatius Shield. Instead, it only argues that St. Ignatius is not entitled to a presumption of protection because it was registered five years after publication. (*See* Brief at 6–7).  Even without this presumption, it is clear that St. Ignatius owns a protectable copyright in the St. Ignatius Shield—St. Ignatius has pled that it was independently created by TWIST and has more than the "minimal degree of creativity" needed for copyright protection. *Hayden*, 629 F. Supp. 3d, at 744; *NOCO*, 2022 U.S. Dist. LEXIS 3911, * 5–6 ("The Court is mindful that the threshold for establishing the originality of an image is not high. At this stage, plaintiff need only allege that the image was independently created and that it possesses a minimal degree of creativity."). The copyright office agreed when it registered the St. Ignatius Shield.

St. Ignatius has also sufficiently pled the second element of a copyright infringement claim because it has alleged facts showing "copying of constituent elements of the work that are original." *Id.* at * 4.

Copying can be shown through direct allegations or by "an inference of copying by showing (1) access to the allegedly-infringed work by the defendant(s) and (2) a substantial similarity between the two works at issue." *Id.* at * 6 (quoting *Kohus v. Mariol*, 328 F.3d 848, 853–54 (6th Cir. 2003)).

The allegations in St. Ignatius' Complaint show both direct copying and that Alexy Metals had (1) access to the St. Ignatius Shield, and (2) that the St. Ignatius Shield and Alexy Shield are substantially similar. St. Ignatius has alleged that Alexy Metals had access to the St. Ignatius Shield when Alexy Metals created the Alexy Shield. (Doc. 1, Compl., ¶ 11). Indeed, Alexy Metals does not contest or argue that it lacked access because it cannot. Alexy Metals used the St. Ignatius Shield when developing the Alexy Shield. (*Id.*).

Second, St. Ignatius has pled that the St. Ignatius Shield and the Alexy Shield are substantially similar. Federal courts in this circuit that have considered copyright infringement claims routinely accept a plaintiff's allegation that two works are substantially similar as sufficient to defeat a motion to dismiss. *See, e.g., Antony v. Buena VISTA Books, Inc.,* No. 18-205-DLB-CJS, 2021 U.S. Dist. LEXIS 257389, * 10–11 (E.D. Ky. Sep. 29, 2021) ("This Court was unable to locate any controlling precedent in which a side-by-side comparison was conducted at the motion-to-dismiss stage in a copyright infringement lawsuit. It is the Court's view that such a comparison is inappropriate at this stage, as the Court is called not to evaluate the factual disputes, but rather to accept Plaintiff's allegations as true."); *WH Midwest, LLC v. A.D. Baker Homes, Inc.,* S.D. Ohio No. 2:18-cv-1387, 2019 U.S. Dist. LEXIS 163108, * 9 (Sep. 24, 2019); *Sophia Parker Studios,*

8

*Inc. v. Temperley*, N.D. Ohio No. 1:24cv2086, 2025 U.S. Dist. LEXIS 231267, * 63–64 (Nov. 25, 2025); *Pay(q)r, LLC v. Sibble*, N.D. Ohio No. 5:15cv1038, 2015 U.S. Dist. LEXIS 173465, * 32 (Dec. 31, 2015); *Design Basics, L.L.C. v. DeShano Cos., Inc.*, E.D. Mich. No. 10-14419, 2012 U.S. Dist. LEXIS 135387, at *19-20 (Sep. 21, 2012); *Goettle*, 2010 U.S. Dist. LEXIS 131944, at * 11–13. St. Ignatius has met this threshold by alleging that the two works are substantially similar, and therefore, has properly pled this second element. (Doc. 1, Compl., ¶ 13).

Cases cited by Alexy Metals are easily distinguished.  In those cases, the copyright claim lacked essential allegations. *See Antony v. Buena VISTA Books, Inc.*, No. 18-205-DLB-CJS, 2021 U.S. Dist. LEXIS 257389, * 3, 8 (E.D. Ky. Sep. 29, 2021) (pro se plaintiff failed to even address arguments in defendant's motion to dismiss and complaint lacked any allegations that plaintiff created anything based on alleged ideas); *Lyles v. Capital - EMI Music, Inc.*, S.D. Ohio No. 2:12-CV-00751, 2013 U.S. Dist. LEXIS 161137 (Nov. 12, 2013) (pro se plaintiff's complaint only contained "bald speculation" as to defendant's access to songs and allegedly infringing lyrics were completely different); *Blehm v. Jacobs*, 702 F.3d 1193 (10th Cir.2012) (concerned a summary judgment motion that did not apply the motion to dismiss standard); *Gray-El v. Jennifer Lopez/Nuyorican Prods.*, No. 19-10952, 2019 U.S. Dist. LEXIS 230908, * 2 (E.D. Mich. Dec. 18, 2019) (pro se plaintiff's complaint contained one paragraph that did not allege any elements of copyright infringement).

In any event, a review of the two works shows that they are substantially similar. Two marks are substantially similar when "they are so alike that the later (unprotected) work can fairly be regarded as appropriating the original expression of the earlier (protected) work." *Scotts Co. LLC v. SBM Life Sci. Corp.*, 749 F. Supp. 3d 865, 880 (S.D. Ohio 2024) (quoting *Enchant Christmas Light Maze & Mkt. v. Glowco*, LLC, 958 F.3d 532, 538–39 (6th Cir. 2020)).

9

Importantly, a plaintiff does not need to prove the two works are identical. *Budish v. Gordon*, 784 F. Supp. 1320, 1334 (N.D. Ohio 1992). Instead, "the question is whether, based upon her 'net impression' of the works' expressive elements, the ordinary lay observer would find them substantially similar to one another." *Design Basics*, 2012 U.S. Dist. LEXIS 135387, at *18-19 (citing *Stromback v. New Line Cinema*, 384 F.3d 283, 293 (6th Cir. 1996)). Further, "the relationship between the degree of proof required for similarity and access may be inversely proportional: where the similarity between the two works is strong, less compelling proof of access may suffice, and vice-versa." *Id.* (quoting *Stromback*, 384 F.3d, at 293).

For example, the Southern District in *Pan v. Kohl's Dep't Stores, Inc.*, 2013 U.S. Dist. LEXIS 130616 (S.D. Ohio) was asked to consider whether Kohl's department store infringed on the plaintiff's copyright rights when it purchased knock-off plastic Santa Claus figurines for use in holiday glitter globes. 2013 U.S. Dist. LEXIS 130616. In that case, the torso of the plaintiff's Santa Claus served as the globe that housed the swirling glitter and the Santa figurine had "a round face with a moustache and beaded eyes, along with a striped scarf and gloves, and the figurine is mounted on a base." *Id.* at * 2. The plaintiff claimed that his Santa and the knock off Santa used by Kohl's had the same shape, height, circumference, torso, head, and nearly identical facial features, skin tones, and mustaches, and both had bear fur trimmed hats, overlapped scarves, lacked a beard and boots, and allegedly had the same position, angles, size, and appearance of their hats, scarves, eyes, noses, arms and mittened hands. *Id.* * 4. Kohl's moved to dismiss the complaint arguing that the plaintiff's work has "no protectible expression under the law, [and] that Plaintiff's Santa is markedly different than the Kohl's Santa." *Id.*

In analyzing the two Santa Clauses, the court removed common elements stereotypical of Santa Claus: "a jolly, elderly man with a rotund stomach, a white beard, and a red hat." *Id.* at * 11.

10

Despite removing these elements, the *Pan* court found that "[t]he expressive choices made in connection with the overall shape, size, and artistic features of the two Santas are protectible." *Id.* * 12. The court then found that "there is a substantial similarity between the artistic, protectible elements of the two works" such as "nearly identical facial features, skin tones, mustaches, fur trimmed hats, and overlapped scarves, as well as the positions, sizes, and appearance of their hats, scarves, eyes, noses, arms and mittened hands." *Id.* * 14. The court noted "minor differences in protectable elements" but that "[t]he likeness —though not identical—cannot be ignored by this Court." *Id.* Accordingly, the court, "mindful" that the case was at the motion to dismiss stage, denied Kohl's motion. *Id.* * 14–15.

Here, the Alexy Shield is substantially similar to the protectable features of the St. Ignatius Shield. Alexy Metals argues that the St. Ignatius Shield is composed of common elements, but that argument ignores the expressive choices that were made in the creation, selection, and arrangement of the constituent parts that make up the St. Ignatius Shield. As alleged in the Complaint, TWIST engaged in a multi-step process to understand and incorporate the historical values of St. Ignatius to incorporate into the St. Ignatius Shield, including considering potential messages and images that would attract individuals in St. Ignatius' target demographic and incorporated them into the Work. (Doc. 1, Compl., at ¶ 3). TWIST developed the St. Ignatius Shield by sketching different designs that included multiple shapes and various Ignatian elements. (*Id.* at ¶ 4). TWIST experimented with dozens of iterations in a variety of different shapes that included an assortment of images arranged in different ways. (*Id.*). TWIST created a unique compilation of original works of art that were hand drawn and converted into digital artwork that considered principles such as "the balance of the elements, its symmetry, its ability to be reduced and enlarged in size, and reproducibility." (*Id.* at ¶¶ 4–7). The end result was the St. Ignatius Shield

11

that consists of a shield with the top left quarter consisting of (clockwise from the top left) the letters "A", "M", "G" and "D" divided from each other by a cross; the top right quarter consisting of seven diagonal stripes or bars on a plain field; and the bottom half of the shield consisting of two mirror-image wolves facing each other from opposite sides of a pot above the words "EST 1886" centered on two lines near the bottom point of the shield. Over the middle of the shield is a ribbon reading "SAINT IGNATIUS". (*See Id.* at ¶ 2).

Like in *Pan*, it is the "[t]he expressive choices made in connection with the overall shape, size, and artistic features" of the St. Ignatius Shield that Alexy Metals copied to create the Alexy Shield. Like the St. Ignatius Shield, the Alexy Shield has the top left quadrant featuring a cross with abbreviations, the top right contains identical stripes with thirteen alternating lighter and darker stripes, a middle ribbon with Alexy Metals' name, and a larger bottom segment with the date of establishment prominently featured.  While there are differences between the two shields, the similarities "cannot be ignored by this Court," particularly when their "net impressions" are considered. This is especially true where St. Ignatius has alleged Alexy Metals had ready access to (and actually used) the St. Ignatius Shield when creating the Alexy Shield, thus lowering the substantial similarity needed to satisfy (and allege) this element. (Doc. 1, Compl., ¶ 11).

Accordingly, St. Ignatius has properly pled that the two works are substantially similar and has properly pled a claim for copyright infringement against Alexy Metals. Alexy Metals' motion should be denied.

### A.    Alexy Metals' Use of the Alexy Shield is Not Fair Use.

Alexy Metals' use of the Alexy Shield is not protected by fair use. The purpose of fair use is to "promot[e] the progress of science and the useful arts." *Harper & Row, Publrs v. Nation Enters.*, 471 U.S. 539, 549 (1985). However, if the use was "not to criticise, but to supersede the

use of the original work, and substitute the review for it, such a use will be deemed in law a piracy."
*Id.* (quoting *Folsom v. Marsh*, 9 F. Cas. 342, 344-345 (No. 4,901) (CC Mass.) (Story, J.)).

Courts review four factors to determine whether a use was fair use:

(1) The purpose and character of the use;

(2) The nature of the copyrighted work;

(3) The substantiality of the portion used in relation to the copyrighted work as a whole;

(4) The effect on the potential market for or value of the copyrighted work.

*Budish v. Gordon*, 784 F. Supp. 1320, 1334–35 (N.D.Ohio 1992) (citing *Harper*, 471 U.S., at 560–61). However, only in "exceptional case[s]" should a court analyze fair use at the motion to dismiss stage. *See In Lux Rsch. v. Hull McGuire PC*, No. 23-523 (JEB), 2024 U.S. Dist. LEXIS 31848, at *9 (D.D.C. Feb. 26, 2024). Additionally, the burden rests with the defendant asserting this doctrine to establish its use was fair use. *Id.* at * 10 (citing *Campbell v. Acuff-Rose Music, Inc.*, 510 U.S. 569, 590 (1994)). Alexy Metals has failed to carry its burden here.

The first factor supports finding that Alexy Metals' use was not fair use. The first factor looks to whether the use was (1) commercial and (2) transformative. "The commercial use of copyrighted material supports a finding that it is not fair use." *Balsley v. LFP, Inc.*, No. 1:08 CV 491, 2010 U.S. Dist. LEXIS 152034, * 7 (N.D. Ohio Jan. 26, 2010). Here, it is clear that Alexy Metals' use of its Shield was commercial. Alexy Metals has used the Alexy Shield to advertise its products and services on its website and on promotional items such as shirts, hats, and golf balls. (Doc. 1, Compl., ¶ 15). Alexy Metals does not even attempt to argue its use was not commercial. (Brief at 10–11). This constitutes commercial use of the Alexy Shield and weighs against finding fair use.

Next, a use is "transformative" if it "adds something new" or "serves a different function than plaintiff's." *Balsley* 2010 U.S. Dist. LEXIS 152034, at * 10. Conversely, if the "alleged infringers copied the material to use it for the same intrinsic purpose for which the copyright owner intended it to be used", then the use is not transformative. *Id.* at * 9. Importantly, "transformative" looks to the purpose of the use, not to whether the alleged infringer physically changed the work, as a work can be transformative even if it exactly copies another work. *See Andy Warhol Found. For the Visual Arts, Inc. v. Goldsmith*, 598 U.S. 508, 539 (2023). For example, in *Warhol*, the Supreme Court held that Campbells used its soup can logo to advertise soup. *Id.* Meanwhile, the purpose of the Warhol Soup Can series, that uses the exact same image of the Campbells soup can, was for "artistic commentary on consumerism, a purpose that is orthogonal to advertising soup," and thus was fair use. *Id.* Unlike the Warhol Soup Cans, the purpose of the Alexy Metals Shield is to advertise and represent the company—the exact same purpose that St. Ignatius uses its Shield.[3] (Doc., Compl., ¶¶ 3, 5, 15). Alexy Metals provides no other intended purpose or use for the Alexy Shield that would otherwise "transform" its use. (*See* Brief, 10–11). Accordingly, this factor weighs against finding fair use.

The next factor looks to whether the copyrighted work is more informational or more creative; if more creative then "the fair use defense is less likely to apply." *Balsley*, 2010 U.S. Dist. LEXIS 152034, at * 14. As described above, significant creative expression went into creating the St. Ignatius Shield, such as the shape, size, icons used, balance of the elements, arrangement and

---

[3] This exact scenario was described by the Supreme Court in *Warhol* to demonstrate when a work is not transformative. The Court described how if the Andy Warhol Foundation had licensed its Soup Can artwork to a business to advertise soup then whether the Warhol Soup Can series was transformative "might be different" because the purpose of the artwork "would share much the same purpose of the Campbell's logo, even though [the Warhol] Soup Cans has some new meaning or message." *Warhol*, 598 U.S. 508, 539, fn. 15.

symmetry positioned in a unique way. Accordingly, the St. Ignatius Shield is creative, and this factor weighs against fair use. *See Images Audio Visual Prods. v. Perini Bldg. Co.*, 91 F. Supp. 2d 1075, 1085 (E.D. Mich. 2000) (finding professional photos created for use in construction arbitration were more creative because "they are not merely one of several interchangeable sources of 'brute facts' about the progress of construction.").

The third factor is determined by "the larger the volume (or the greater the importance) of what is taken, the greater the affront to the interests of the copyright owner, and the less likely that a taking will qualify as a fair use." *Princeton Univ. Press v. Mich. Document Servs.*, 99 F.3d 1381, 1389 (6th Cir. 1996). As explained above, the Alexy Shield copied from the St. Ignatius Shield exactly what makes St. Ignatius' work so creative and unique: the shape, size, balance of the elements, arrangement, and symmetry. If Alexy Metals were to change any of those key features (for example, from a shield to a pentagon; from four segments to five; removed the ribbon, removed the larger bottom section, changed the location of its name, replaced the cross with abbreviations with another symbol), then the Alexy Shield would look (and feel) different because it would no longer be copying the important, essential, and creative aspects of the St. Ignatius Shield. This shows how this factor weighs in favor of St. Ignatius.

The fourth factor "is at least *primus inter pares*, figuratively speaking." *Princeton*, 99 F.3d at 1385. Importantly, "[w]hen the second work is duplicative of the original and it was made for a commercial purpose, there is a presumption of market harm to the original work." *Calibrated Success, Inc. v. Charters*, 72 F. Supp. 3d 763, 772 (E.D. Mich. 2014) (citing *Campbell v. Acuff-Rose Music, Inc.*, 510 U.S. 569, 591 (1994)). Here, Alexy Metals used its infringing and duplicative work for commercial purposes to advertise its goods and services, thus creating a

15

presumption of market harm. (Doc. 1, Compl., at ¶ 15). Alexy Metals has failed to meet its burden to rebut this presumption and prove the market effect factor weighs in its favor. (Brief at 12).

Alexy Metals also incorrectly focuses on its own conduct when analyzing this factor. Instead, the question is whether "widespread conduct of the sort engaged in by [Alexy Metals] would adversely impact [St. Ignatius'] potential market." *Calibrated Success,* 72 F. Supp. 3d, at 773. The answer is yes: if companies in Northeast Ohio widespread copied the St. Ignatius Shield to advertise their goods and services, St. Ignatius' potential market would be adversely impacted. Accordingly, this factor weighs against fair use.

Because all factors weigh against fair use, the court should not find Alexy Metals' use of the Alexy Shield was fair use.

### C.      St. Ignatius' Claim is Not Barred by the Statute of Limitations.

St. Ignatius' claim is not time-barred. "[E]ach act of infringement is a distinct harm, the statute of limitations bars infringement claims that accrued more than three years before suit was filed, but does not preclude infringement claims that accrued within the statutory period." *Roger Miller Music, Inc. v. Sony/ATV Publ'g, LLC*, 477 F.3d 383, 390 (6th Cir. 2007). Alexy Metals has repeatedly published copies of the Alexy Shield on its website and on promotional items over the past three years.  (Doc. 1, Compl., ¶¶ 12, 15). Accordingly, St. Ignatius claims are not time barred.

### D.      St. Ignatius is Entitled to Actual Damages.

St. Ignatius acknowledges that it is not entitled to statutory damages or attorneys' fees under 17 U.S.C. § 412. However, Alexy Metals is "not free to infringe merely because it allegedly began infringing prior to registration. [Alexy Metals] is still liable for actual damages if infringement is proven." *Remark Home Designs, Ltd. Liab. Co. v. Oak St. Condo Projects, Ltd. Liab. Co.*, No. 16-cv-14305, 2017 LX 59976, * 9 (E.D. Mich. Aug. 1, 2017) (quotation omitted).

16

Those damages can be measured by Alexy Metals' revenues. Thus, St. Ignatius has the right to recover damages in this case.

### E. The State Court Decision Has No Effect on This Case.

Judge Collier-Williams' decision granting summary judgment for Alexy Metals on St. Ignatius' claims for state law trademark infringement, state law trademark dilution, violation of the Lanham Act under 15 U.S.C. § 1125(a), and violations of Ohio's Deceptive Trade Practices Act (the "Decision") has no impact on this case because that ruling is neither claim nor issue preclusive as to St. Ignatius' copyright infringement claim before this Court.

Under 28 U.S.C. § 1738, a federal court must give a "a prior state court judgment the same preclusive effect which that judgment would have in state court." *Forry, Inc. v. Neundorfer, Inc.*, No. C87-478, 1987 U.S. Dist. LEXIS 3320, * 18 (N.D. Ohio Apr. 9, 1987). "A federal court ruling on the issue of claim preclusion applies the law of the state in which the judgment was rendered." *Stark v. Gov't Accounting Sols., Inc.*, No. 2:07-cv-755, 2009 U.S. Dist. LEXIS 17895, * 3 (S.D. Ohio Mar. 9, 2009). Ohio law recognizes both claim and issue preclusion. *Id.* at * 4.

The Decision is not claim preclusive. Under Ohio law, claim preclusion requires "a prior final, valid decision by a court of competent jurisdiction and a subsequent action involving the same parties or their privies that raises claims that were or could have been litigated in the earlier action and that arises out of the transaction or occurrence that was the subject matter of the earlier action." *Id.* at * 5. However, copyright infringement "lies exclusively within the jurisdiction of the federal district courts" and Ohio claim preclusion requires that "the rendering court possess subject jurisdiction matter over the claim sought to be barred." *Id.* at * 8; *see also Forry*, 1987 U.S. Dist. LEXIS 3320, * 18 (finding application of *res judicata* over copyright infringement in subsequent federal case "wholly without merit" because "neither the copyright at issue here, claims equivalent

to copyright, nor claims relative to the copyright, could have been raised in the prior state court litigation between these parties which resulted in the final state court judgment which defendants now attempt to raise as a bar to this Federal Court action."). Accordingly, the Decision does not prevent St. Ignatius' copyright claim in this case.

The Decision is similarly not issue preclusive. Under Ohio law, issue preclusion applies when "(1) the parties in the prior action are identical to, or in privity with, the parties in the subsequent action and (2) the issue in dispute was actually litigated and (3) necessarily decided in the earlier action." *Stark v. Gov't Accounting Sols., Inc.*, No. 2:07-cv-755, 2009 U.S. Dist. LEXIS 114902, at *7 (S.D. Ohio Dec. 9, 2009). "[A] state court's findings on matters distinctive to copyright law itself are not entitled to preclusive effect because, given exclusive federal jurisdiction over copyright infringement actions, the findings cannot have been necessary to the state-court judgment." *Id.* at * 8. Similarly, Judge Batchelder in *Forry* found the exclusive jurisdiction of copyright precludes issue preclusion. *Forry*, 1987 U.S. Dist. LEXIS 3320, * 18.

This analysis applies here because St. Ignatius' copyright claim is distinctive from the claims it filed in state court.  The basic subject matter of the Copyright Act is the improper copying, distribution, and display of copyrighted works. *Lyons v. Gillette*, 882 F.Supp.2d 217, 232–233 (D. Mass. 2012). The basic subject matter of St. Ignatius' state court claims was customer confusion. *Compare Bedford Auto Dealers Assn. v. Mercedes Benz of N. Olmsted,* 2012-Ohio-927, ¶ 12 (8th Dist.) (analyzing factors for violations under 15 U.S.C § 1125(a) and O.R.C. § 4165.02(A)(3)) *with Daddy's Junky Music Stores, Inc. v. Big Daddy's Family Music Ctr.*, 109 F.3d 275, 288 (6th Cir.1997) (holding Ohio common law trademark infringement claim has same elements as federal claim and applying those elements); *Jet, Inc. v. Sewage Aeration Sys.*, 165 F.3d 419, 424 (6th Cir.1999) (applying common law trademark dilution). Accordingly, because St. Ignatius' state

18

court claims and its copyright claim concern different issues and considerations, the Decision is not issue preclusive in this case.[4]

Alexy Metals may argue that the similarity between the St. Ignatius Shield and Alexy Shield is a common issue. However, that argument would be misplaced because copyright infringement, trademark infringement, and dilution require different analysis for similarity. For example, the Decision stated that the similarity factor weighed against St. Ignatius based on caselaw that a mark bearing an entity's name precludes customer confusion. (Decision at 6). However, in copyright customer confusion is not a consideration. For dilution, the Decision stated that "[m]ere similarities of a handful of highly common design elements is insufficient to prove dilution." (Decision at 13). But this analysis lacked the comparison of creative elements present in the St. Ignatius Shield described above that the Alexy Metals Shield copied because the state court was not conducting a copyright infringement analysis of two works but instead applied a high standard of similarity for dilution. (Decision at 13) (finding dilution required marks to be "nearly identical" to "very similar").

The state court also did not consider the "net impressions" of the two works or the effect of Alexy Metals' access to (and use of) the St. Ignatius Shield on the similarity analysis which are necessary considerations in copyright infringement claims.

---

[4] Analogous cases analyzing whether claims like those brought by St. Ignatius in its state court action were preempted by the Copyright Act highlight the differences between these types of claims and refused to find them preempted, showing the separate issues at stake between trademark/customer confusion related claims and copyright infringement claims. *See Worth Beauty LLC v. Allstar Prods. Group, LLC,* 2017 U.S. Dist. LEXIS 187392, * 29 (S.D. Tex Nov. 13, 2017) ("the gravamen of these state law claims, consumer confusion and brand protection, cannot fairly be characterized as pertaining to exclusive rights within the general scope of copyright"); *Tracy v. Skate Key, Inc*., 697 F. Supp. 748, 750-51 (S.D.N.Y. 1988) (holding that claim for trademark dilution was not preempted because it involved the "additional element" of misrepresentation or deception).

19

Finally, when finding the St. Ignatius Shield consisted of common elements, the state court did not consider how the arrangement, selection of images, and artistic decisions particularly applicable to copyrighted compilations compared with the Alexy Shield which this court must consider for St. Ignatius' copyright infringement claim. *See Faessler v. United States Playing Card Co.*, 2007 U.S. Dist. LEXIS 12767, * 28 (S.D. Ohio Feb. 9, 2007) ("there is arguably at least a modicum of creativity and originality in [plaintiff's] selection and arrangement of the insignia as well as his choice of image on the card backs and packages."); *Budish* 784 F. Supp., at 1333 ("The cluttered tables in the [government source of facts] appear nothing like Plaintiff's final Tables, and clearly it was Plaintiff's selectivity that made the difference. Based on the foregoing, the Court concludes that the Plaintiff Budish's Tables contain protectible expression.").

Accordingly, the Decision should have little to no impact on how this Court decides issues in this case which concern issues related to copyright law.

## **CONCLUSION**

For the reasons explained above, Alexy Metals' motion should be denied.

/s/ James B. Niehaus
James B. Niehaus (0020128)
jniehaus@frantzward.com
Patrick A. Walsh (0101589)
pwalsh@frantzward.com
FRANTZ WARD LLP
200 Public Square, Suite 3000
Cleveland, Ohio 44114
216.515.1660 – Telephone
216.515.1650 – Facsimile
Attorneys for Plaintiff St. Ignatius High
School of Cleveland

20

## CERTIFICATE OF SERVICE

I certify that the foregoing was filed on June 3, 2026, and that a copy will be served on all counsel of record via the Court's electronic filing system.

/s/  James B. Niehaus
Attorney for Plaintiff

## CERTIFICATE OF COMPLIANCE WITH PAGE LIMITATION

In accordance with Local Rule 7.1, Defendant hereby certifies that this case has been assigned to the standard track, but the page limitations have been modified by order of the Court [05/06/2026 Order].  The foregoing Memorandum does not exceed the 23-page limit set by the Court and local rules (20 pages for memoranda related to dispositive motions plus 3 additional pages in accordance with the Court's May 6, 2026 Order).

/s/  James B. Niehaus
Attorney for Plaintiff

21