IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| St. Ignatius High School of Cleveland, | CASE NO. 1:26-cv-474 |
| Plaintiff, | JUDGE DAN AARON POLSTER |
| v. | |
| Alexy Metals, Ltd., | **ALEXY METALS' REPLY IN SUPPORT OF MOTION TO DISMISS PLAINTIFF ST. IGNATIUS HIGH SCHOOL OF CLEVELAND'S COMPLAINT OR, ALTERNATIVELY, STRIKE ALLEGATIONS** |
| Defendant. | |

**TABLE OF CONTENTS**

I. INTRODUCTION ................................................................................................................1

II. ARGUMENT.....................................................................................................................2

    A.    This Court Can and Should Rule the Alexy Metals Shield is not Substantially Similar as a Matter of Law...........................................................2

        1.    St. Ignatius Misstates the Pleading Standard for Substantial Similarity..............................................................................3

        2.    St. Ignatius Identifies No Case in which Merely Alleging "Substantial Similarity" Meets Pleading Requirements. ....................4

        3.    The Designs do not Share Material of Substance and Value ...............................................................................................6

    B.    Alexy Metals' Use is Fair Use ........................................................................8

        1.    St. Ignatius Overreaches in its Analysis of the First Fair Use Factor ......................................................................................8

        2.    St. Ignatius Skims Over its Own Admission that its Work is a Compilation ...................................................................9

        3.    St. Ignatius' Analysis of the Fourth Fair Use Factor Implicates the Common Pleas Court Judgment...................................9

        4.    This Court Can and Should Decide Fair Use at the Pleading Stage.................................................................................10

    C.    St. Ignatius Misconstrues Alexy Metals' Motion to Strike ...........................10

    D.    The Complaint Fails to State Infringing Acts Within the Statutory Period..............................................................................................11

    E.    St. Ignatius Chose Its Forums—It Should Not Be Permitted to Litigate The Facts Piecemeal.........................................................................12

III. CONCLUSION...............................................................................................................15

ii

## I.  INTRODUCTION

Plaintiff St. Ignatius High School of Cleveland ("St. Ignatius") embellishes the law and its own allegations in opposing Defendant Alexy Metals Ltd's ("Alexy Metals") Motion to Dismiss or, in the Alternative, Strike Allegations ("Motion"). This case involves straightforward application of basic copyright principles preventing St. Ignatius from using copyright law to obtain redress for phantom reputational harm it could not obtain under the Lanham Act. Having had its reputational harm theory rejected by the Common Pleas court, St. Ignatius dusts off allegations involving supposed copying of the St. Ignatius Shield in 2020 and 2021 but alleges no new acts of "copying" taking place within the three years prior to filing its Complaint. Both in the infringement analysis and fair use defense, copyright law protects common geometric symbols and basic designs as shared language. St. Ignatius' own Complaint admits it used "Ignatian imagery"[1] but would have the Court prevent others from using symbols available as clip art in their own designs.  Under either an infringement analysis or weighing of the fair use factors, St. Ignatius is not entitled to relief as a matter of law.

Just as it did in the Common Pleas action, St. Ignatius refuses to acknowledge it overpleaded its case even when caught red-handed. St. Ignatius' Opposition admits St. Ignatius is not entitled to the statutory damages and attorneys fees requested in the Complaint but instead of conceding Alexy Metals is entitled to the relief requested in its Motion—striking those allegations in the Complaint—St. Ignatius creates a straw man claiming it is entitled to seek *other* forms of damages.  The Court need not issue an advisory opinion on imaginary issues.  Black letter law prevents St. Ignatius from obtaining statutory damages or attorneys' fees so Alexy Metals is entitled to the relief requested in its Motion to Strike.

---

[1] *See* Doc. #: 1, Compl. ¶¶ 4-5.

Finally, although the underlying rationales of judicial efficiency and preventing manipulation of the justice system weigh in favor of dismissing St. Ignatius' Complaint based on claim splitting, current case law does not extend res judicata to instances in which the initial court did not have subject matter jurisdiction over the claim raised in the secondary action.  Federal courts have exclusive jurisdiction over copyright claims. Even though St. Ignatius could have brought its original claim in this Court, it chose to proceed on its Lanham Act claims before the less-experienced Common Pleas court. However, to the extent St. Ignatius tries to revisit issues and facts decided in that proceeding it should be prevented from relitigating them.  For example, St. Ignatius attempted to argue to the Common Pleas court that the Lanham Act did not require consumer confusion (and admitted consumer confusion did not exist).  The Common Pleas court rightly rejected St. Ignatius' claim to a sort of in gross trademark right akin to copyright. Now, in this case, it appears that St. Ignatius will attempt to rely on alleged market harms if others used trademarks similar to the St. Ignatius Shield.[2] This is very much an issue determined by the Common Pleas court.  See Doc #: 9-4  at PageID #: 83 (no infringement) and PageID #: 87 (no dilution).

## II.  ARGUMENT

### A.    This Court Can and Should Rule the Alexy Metals Shield is not Substantially Similar as a Matter of Law

St. Ignatius attempts to persuade the Court that it cannot decide infringement at the pleading stage. Not so. It is widely accepted that in cases alleging infringement of non-technical works, courts can perform their own side-by-side analysis to decide infringement. St. Ignatius also attempts to equate infringement with originality. Alexy Metals did not ask the Court to hold that

---

[2] *See* Doc. #: 12 at PageID #: 478 ("[I]f companies in Northeast Ohio widespread copied the St. Ignatius Shield to advertise their goods and services, St. Ignatius' potential market would be adversely impacted.").

the St. Ignatius Shield is not sufficiently original.

**1.      St. Ignatius Misstates the Pleading Standard for Substantial Similarity**

Plaintiff contends that all it need do is recite the words "substantially similar" in its Complaint. But "[w]hile a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)  (citations omitted).  Plaintiff would have the Court ignore this basic holding of *Twombly*.

Instead, "[w]here, as here, the works in question are made part of the pleadings in the case, it is entirely appropriate for the district court to address the issue of substantial similarity in connection with a motion to dismiss." *Lyles v. Cap.-EMI Music Inc*., No. 2:12-CV-00751, 2013 WL 6000991, at *4 (S.D. Ohio Nov. 12, 2013) (granting motion to dismiss based on lack of substantial similarity), citing *Peter F. Gaito Architecture, LLC v. Simone Dev. Corp*., 602 F.3d 57, 64 (2d Cir. 2010).

> In copyright infringement actions, "the works themselves supersede and control contrary descriptions of them," *Walker*, 784 F.2d at 52, including "any contrary allegations, conclusions or descriptions of the works contained in the pleadings." 3–12 Nimmer on Copyright § 12.10. *See Walker v. Time Life Films, Inc*., 615 F.Supp. 430, 434 (S.D.N.Y.1985); *Shipman v. R.K.O. Radio Pictures, Inc*., 20 F.Supp. 249, 249 (S.D.N.Y.1937). When a court is called upon to consider whether the works are substantially similar, no discovery or fact-finding is typically necessary, because "what is required is only a visual comparison of the works." *Folio Impressions, Inc. v. Byer Cal*., 937 F.2d 759, 766 (2d Cir.1991).

*Peter F. Gaito Architecture*, 602 F.3d at 64.

Alexy Metals cites five illustrative Sixth Circuit district court decisions in which courts

3

granted motions to dismiss based on a lack of substantial similarity. [3] *See* Doc. #:8 at PageID #: 39.  St. Ignatius claims "[i]n those cases, the copyright claim lacked essential allegations" and denigrates some of the cases as involving pro se plaintiffs. *See* Doc. #12: at PageID #: 471.  But St. Ignatius proceeds to address just one of the five illustrative cases cited by Alexy Metals.  And, in that case, the court performed a detailed comparison of the songs at issue before deciding allegations of substantial similarity were not plausible. *Lyles*, 2013 WL 6000991, at *4 (S.D. Ohio Nov. 12, 2013). St. Ignatius' description of *Gray-El v. Jennifer Lopez/Nuyorican Prods., Inc.*, No. 19-10952, 2019 WL 8750506, at *13 (E.D. Mich. Dec. 18, 2019), *report and recommendation adopted sub nom. Gray-El v. Lopez*, No. 19-CV-10952, 2020 WL 1060642 (E.D. Mich. Mar. 5, 2020), which Alexy Metals cited later in its brief (Doc. #:8 at PageID #: 41), is similarly inapt. Despite being a "pro se plaintiff's complaint" (Doc. #:12 at PageID #: 471), the *Gray-El* court thoroughly compared the two works before determining substantial similarity implausible.

Alexy Metals never cited *Antony v. Buena Vista Books, Inc.*, No. CV 18-205-DLB-CJS, 2021 WL 8200714, at *3 (E.D. Ky. Sept. 29, 2021) in its Motion. And it cited *Blehm v. Jacobs*, 702 F.3d 1193, 1208 (10th Cir. 2012), for the statement that "[c]opying alone is not infringement. The infringement determination depends on what is copied," noting it was decided on summary judgment. *See* Doc. #:8 at PageID #: 40.

**2.  St. Ignatius Identifies No Case in which Merely Alleging "Substantial Similarity" Meets Pleading Requirements.**

St. Ignatius includes a string cite of six cases to support its contention "Federal courts in

---

[3] *SnagPod, LLC v. Precision Kiosk Techs., Inc.*, No. 23-CV-10401, 2023 WL 6644133, at *5 (E.D. Mich. Oct. 12, 2023); *Johnson v. Apple Inc.*, Case No. 3:13-cv-204, 2014 WL 4076148, *4 (S.D. Ohio Aug. 14, 2014) (granting motion to dismiss because plaintiff's general claims "merely allege[d] infringement of ideas"); *Lyles v. Capital-EMI Music Inc.*, No., 2013 WL 6000991, at *4 (S.D. Ohio Nov. 12, 2013) (granting motion to dismiss due to lack of substantial similarity); *Taylor v. Victoria's Secret Stores, Inc.*, No. 10-2334-JPM-tmp, 2011 WL 13097641, at *5 (W.D. Tenn. Sept. 29, 2011) (finding that it is appropriate for a court to dismiss a copyright infringement claim under Rule 12 "if it concludes that the similarities pertain only to unprotected elements of the work").

this circuit that have considered copyright infringement claims routinely accept a plaintiff's allegation that two works are substantially similar as sufficient to defeat a motion to dismiss." Doc #: 12 at PageID #: 470-71. Those cases hold nothing of the sort.

In *Antony v. Buena Vista Books, Inc.*, No. CV 18-205-DLB-CJS, 2021 WL 8200714, at *3 (E.D. Ky. Sept. 29, 2021), despite claiming it "was unable to locate any controlling precedent in which a side-by-side comparison was conducted at the motion-to-dismiss stage in a copyright infringement lawsuit," the court did just that, identifying a number of elements that it believed established substantial similarity. Similarly, in *W.H. Midwest, LLC v. A.D. Baker Homes, Inc.*, No. 2:18-CV-1387, 2019 WL 4645497, at *3 (S.D. Ohio Sept. 24, 2019), the court observed that photos of the asserted and accused elevations were included in the complaint. The court also noted:

> The Sixth Circuit has held that "[c]opyright infringement, like anti-trust actions, lends itself readily to abusive litigation," and "[t]herefore, greater particularity in pleading, through showing 'plausible grounds,' is required." *Nat'l Bus. Dev. Servs., Inc. v. Am. Credit Educ. & Consulting Inc.*, 299 F. App'x 509, 512 (6th Cir. 2008), (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007)).

*Id*. at *2.

In *Sophia Parker Studios, Inc. v. Temperley*, No. 1:24CV2086, 2025 WL 3280329, at *20 (N.D. Ohio Nov. 25, 2025), the main question before Judge Barker was whether a photograph of a sculptural work could be an unauthorized derivative work. Regarding substantial similarity, she found "[c]ontrary to Romo, Inc.'s assertion, there are factual allegations supporting this legal conclusion" and proceeded to identify them." *Id*. at *22. *Pay(q)r, LLC v. Sibble*, No. 5:15CV1038, 2015 WL 9583034 (N.D. Ohio Dec. 31, 2015) is entirely inapplicable here. In *Pay(q)r*, the defendant was a contractor accused of taking wholesale and using for a competing product the software code it created for the plaintiff. *Id*. at *1. The court in *Design Basics, L.L.C. v. DeShano*

5

*Companies, Inc.*, No. 10-14419, 2012 WL 4321313, at \*7-\*8 (E.D. Mich. Sept. 21, 2012) also cited its comparison of the works in finding substantial similarity.

In *Richard Goettle, Inc. v. Burgess & Niple, Inc*., No. 1:10-CV-187, 2010 WL 5156121, at \*4 (S.D. Ohio Dec. 14, 2010), the court observed the plaintiff "also has pleaded that B & N copied the copyrighted work and attached comparison sheets with examples to illustrate the manner by which the designs are substantially similar." *Goettle*, in fact, notes that copyright infringement cases are dismissed at the pleading stage, citing to the Second Circuits decision in *Peter F. Gaito Arch., LLC v. Simone Dev. Corp.*, 602 F.3d 57, 63–65 (2d Cir.2010), as well as *Taylor v. IBM*, 54 F. App'x 794, 794 (5th Cir.2002) (dismissing where plaintiff failed to allege copying of copyrightable text); *Nelson v. PRN Prods., Inc.,* 873 F.2d 1141, 1143–44 (8th Cir.1989) (finding no substantial similarity between song lyrics). *See Goettle*, 2010 WL 5156121, at \*2.

3.      **The Designs do not Share Material of Substance and Value**

In evaluating substantial similarity, the Court should look to the designs themselves, not how they are described by St. Ignatius. *See Dress Barn, Inc. v. Klauber Bros., Inc.,* No. 18CV8085(DLC), 2019 WL 1949675, at \*4 (S.D.N.Y. Apr. 22, 2019) ("[Claimant's] description characterizes each element of the design at a level of detail that obscures the most prominent features of the two designs. Those more prominent features are sufficiently different that the ordinary observer would not perceive the designs as substantially similar."). St. Ignatius mistakenly focuses only on the similarities between the designs described at the level of ideas rather than the specific expression used by Alexy Metals.

The difference in the color schemes and detailing of the two designs is "one glaringly obvious difference" between the two designs. *See Anton Int'l v. Zhang*, No. 521CV00120JWHKKX, 2021 WL 3017994, at \*3 (C.D. Cal. Apr. 26, 2021) (granting motion to

6

dismiss; no substantial similarity between unicorn designs). The differences in the upper left quadrant of the two designs are major because they turn what is a common Ignatian AMDG cross in the St. Ignatius Shield into the periodic table of elements in the Alexy Metals Shield—an entirely different meaning to lay observers. Similarly, the ubiquity of diagonal stripes on shields, ribbons with names on them, and years of establishment renders these similarities non-elements regardless of where they appear. Observers would instead notice the AM Pyramid design, like they would be more likely to notice the wolves over a cauldron in the St. Ignatius Shield. And the differences in the names and how the years of establishment are expressed are major, not minor, differences.

The court's analysis in *Hua-Cheng Pan v. Kohl's Dep't Stores, Inc.*, No. 2:12-CV-01063, 2013 WL 5181144, at \*5 (S.D. Ohio Sept. 12, 2013) does not aid St. Ignatius' argument. In that case, the court noted the detailed Santa statutes had only "minor differences" and "an ordinary lay observer would overlook the dissimilarities." *Id*. at \*5. The differences between the St. Ignatius Shield and the Alexy Metals Shield, taking into account how common the individual elements are, are not minor nor would they be overlooked.

Here, when the stock nature of the individual design elements that St. Ignatius itself copied from others are taken into account,[4] the manner in which the Alexy Metals Shield is expressed is not sufficiently similar to any protectable expression in the compilation of basic shapes in the St. Ignatius Shield such that "an ordinary reasonable person" would conclude that Alexy Metals "unlawfully appropriated the plaintiff's protectable expression by taking **material of substance**

---

[4] St. Ignatius admits that any rights it possesses are in the nature of a compilation. Compl. ¶ 5; Doc. #:12 at PageID #: 473, 482. While the copyright in compilations is ordinarily "thin," *Feist Publ'ns, Inc. v. Rural Telephone Serv. Co.*, 499 U.S. 340, 349 (1991), here it is more so because copyright protection does not extend to "[w]ords and short phrases such as names, titles, and slogans [and] familiar symbols or designs." 37 C.F.R. § 202.1(a). The combination of a handful of ubiquitous symbols is more akin to an unprotectable slogan than an artistic work entitled to broad protection.

*and value*." *Stromback*, 384 F.3d at 297 (emphasis added). The Court should dismiss the Complaint for failure to plausibly allege substantial similarity.

**B. Alexy Metals' Use is Fair Use**

**1. St. Ignatius Overreaches in its Analysis of the First Fair Use Factor**

St. Ignatius limits consideration of the first fair use factor to the fact that the Alexy Metals Shield is used as a trademark.[5] But "the first factor relates to the problem of substitution— copyright's bête noire. The use of an original work to achieve a purpose that is the same as, or highly similar to, that of the original work is more likely to substitute for, or " 'supplan[t],' " the work." *Andy Warhol Found. for the Visual Arts, Inc. v. Goldsmith*, 598 U.S. 508, 528 (2023). The "fanciful" hypothetical in Footnote 15 of *Warhol* reveals the weaknesses in St. Ignatus' position – the Supreme Court specifically noted that the use of "Warhol's Soup Cans ***to a soup business*** to serve as its logo" would share the same purpose as the Campbell's logo. *Id.* at 539 (emphasis added). It is illogical to posit that people will want to buy a shirt with the Alexy Metals Shield on it (not that Alexy Metals sells such shirts), instead of purchasing a shirt with the St. Ignatius Shield.

Here, the two designs are not substitutes—the differences go to the very purpose of the parties' divergent uses of their respective designs to, on the one hand, communicate affiliation with St. Ignatius/the Jesuits (the St. Ignatius Shield) and, on the other hand, communicate affiliation with precious metals (the Alexy Metals Shield). "The meaning of a secondary work, as reasonably can be perceived, should be considered to the extent necessary to determine whether the purpose of the use is distinct from the original." *Id*. at 512. The meaning of any similar elements is transformed in the Alexy Metals Shield to communicate a message different from that of the St.

---

[5] "[G]iven that much of the creative work performed in this country is done for commercial purposes," whether Alexy Metals' use is "commercial" is less significant than St. Ignatius pretends. *See House of Bryant Publications, LLC v. A & E Television Networks*, No. 3:09-0502, 2009 WL 3673055, at *5 (M.D. Tenn. Oct. 30, 2009).

Ignatius Shield.  The fair use defense, along with the idea/expression dichotomy, is a bulwark against intrusions into First Amendment rights. *See Eldred v. Ashcroft*, 537 U.S. 186, 219-20 (2003). The Alexy Metals Shield does not merely add new expression, it changes the meaning and message of any similar design elements. *See Campbell v. Acuff–Rose Music, Inc.*, 510 U.S. 569, 579 (1994).  Accordingly, the first fair use factor weighs in favor of finding fair use here.

**2.      St. Ignatius Skims Over its Own Admission that its Work is a Compilation**

Like substantial similarity, a fair use analysis must take into account the nature and amount of the material Alexy Metals allegedly copied.  17 U.S.C. § 107(2)-(3).  Here, creative or not, the protection afforded St. Ignatius' compilation of Ignatian symbols is thin. *See Feist*, 499 U.S. at 349.  This fact plays into both the second and third fair use factors. 17 U.S.C. § 107(2)-(3).  The handful of shared design elements are the most ubiquitous of St. Ignatius' compilation and expressed differently in the Alexy Metals Shield.

**3.      St. Ignatius' Analysis of the Fourth Fair Use Factor Implicates the Common Pleas Court Judgment**

The fourth fair use factor focuses on the market effects of the use.  St. Ignatius argues: "if companies in Northeast Ohio widespread copied the St. Ignatius Shield ***to advertise their goods and services***, St. Ignatius' potential market would be adversely impacted." Doc. #: 12 at PageID #: 478 (emphasis added).  The Common Pleas court already determined that Alexy Metals' use of the Alexy Metals Shield does not dilute the value of St. Ignatius' trademark or harm St. Ignatius' market, including in light of the existing widespread use of the same or similar design elements. Doc #: 9-4  at PageID #: 79, also PageID #: 86.  St. Ignatius does not (nor could it plausibly) allege that uses of just the most basic and ubiquitous portions of the St. Ignatius Shield would impact sales of its spirit wear. Any sales of the design by St. Ignatius stem from its associative value as a trademark—not the design.

9

"[A] use that has no demonstrable effect upon the potential market for, or the value of, the copyrighted work need not be prohibited in order to protect the author's incentive to create." *Sony Corp. of Am. v. Universal City Studios, Inc.*, 464 U.S. 417, 450, 104 S. Ct. 774, 793, 78 L. Ed. 2d 574 (1984).  The Common Pleas court determined "the parties' goods and services are completely unrelated to one another." Doc #: 9-4  at PageID #: 79.

**4.      This Court Can and Should Decide Fair Use at the Pleading Stage**

St. Ignatius contends that consideration of fair use at this stage of the case is verboten.  Not so. As observed by the Southern District of New York, "Numerous courts in this district have resolved the issue of fair use on a motion for judgment on the pleadings by conducting a side-by-side comparison of the works at issue." *Lombardo v. Dr. Seuss Enters., L.P.*, 279 F. Supp. 3d 497, 504 (S.D.N.Y. 2017), aff'd, 729 F. App'x 131 (2d Cir. 2018) (granting Rule 12(c) motion). The underlying tenet that a court can decide affirmative defenses at the pleading stage holds true for the Sixth Circuit as well. *Hensley Mfg. v. ProPride, Inc.*, 579 F.3d 603, 613 (6th Cir.2009) ("where the undisputed facts conclusively establish an affirmative defense as a matter of law," a motion to dismiss may be granted."); *see also Claybrooks v. Am. Broadcasting Cos., Inc.*, 898 F. Supp. 2d 986, 992 (M.D. Tenn. 2012) (noting principle applies to First Amendment defenses at pleading stage; "when a plaintiff's allegations establish that the First Amendment bars the plaintiff's claims as a matter of law, federal courts may dismiss those claims").

St. Ignatius identifies no additional discovery that might be relevant to a determination of fair use. *See id*. at 504-505. Because all four fair use factors weigh in favor of finding fair use, the Court should dismiss St. Ignatius' Complaint with prejudice.

**C.      St. Ignatius Misconstrues Alexy Metals' Motion to Strike**

St. Ignatius bizarrely recasts Alexy Metals request to strike St. Ignatius' allegations about

10

statutory damages and attorneys' fees as "What types of damages are St. Ignatius is entitled to due to Alexy Metals' infringement of St. Ignatius' copyright in the St. Ignatius Shield?" Doc. #12 PageID #: 463. St. Ignatius admits it is not entitled to statutory damages or attorneys fees. *Id.* at PageID #: 478. Other forms of damages or relief are not the subject of Alexy Metals' Motion, so there is no reason to issue an advisory opinion here based on St. Ignatius' misconstruing Alexy Metals' Motion to Strike.

Accordingly, because St. Ignatius concedes that it is not entitled to statutory damages and attorneys' fees, the Court should strike those allegations.

**D.      The Complaint Fails to State Infringing Acts Within the Statutory Period**

St. Ignatius cites to Paragraphs 12 and 15 of the Complaint to argue that it alleges infringing activities within the past three years. It does not. Those paragraphs refer vaguely to "use,"[6] but "use" is not one of the acts proscribed under 17 U.S.C. § 106. The "bundle of rights" the Copyright Act grants owners includes the rights to "reproduce," "prepare derivative works based upon," "distribute copies" of, and to "display" the copyrighted work publicly. 17 U.S.C. § 106(1)–(3), (5). Other than allegations about the creation of the Alexy Metals Shield in 2019 (Doc. #: 1 at ¶ 11) and subsequent changes to it in 2021 (*id.* at ¶ 12), the Complaint fails to allege "by what acts [identified in § 106] and during what time the defendant infringed the copyright." *See Richardson v. Com. Media Holdings, LLC*, No. 24 CIV. 4660, 2025 WL 919670, at *2 (S.D.N.Y. Mar. 26,

---

[6] St. Ignatius alleges:

¶ 12. Although Alexy Metals continued to use this logo at least until August 2025, in approximately 2021, Alexy Metals made some "minor changes" to the Alexy Metals logo. These "minor changes" resulted in the current Alexy Metals logo, which Alexy Metals continues to use.

¶ 15. Alexy Metals uses the logo on its website: alexymetals.com. Alexy Metals also uses the logo on various promotional items, including, but not limited to, shirts, hats, and golf balls.

Doc. # 1, PageID #: 3-4

11

2025), *reconsideration denied*, No. 24 CIV. 4660 (PAE), 2025 WL 1938705 (S.D.N.Y. July 15, 2025).

The alexymetals.com website is the same website that St. Ignatius was put on notice of in August 2021. Moreover, the Act defines "publication" as the "the distribution of copies ... of a work to the public by sale or other transfer of ownership, or by rental, lease or lending." 17 U.S.C. § 101. And "'merely posting a digital file' on the Internet"—the most St. Ignatius alleges Alexy Metals did here—"does not amount to 'publication' under the Copyright Act." *McLaren v. Chico's FAS, Inc.*, No. 10 Civ. 2481 (JSR), 2010 WL 4615772, at *4 (S.D.N.Y. Nov. 9, 2010).

"Moreover, the Sixth Circuit has held that a plaintiff has an 'obligation' to plead facts in avoidance of the statute of limitations when 'the face of the complaint discloses a failure to file within the time allowed.' In other words, where a complaint 'affirmatively indicates that the time limit for bringing the claim has passed,' the plaintiff cannot 'escape the statute by saying nothing.'" *Reid ex rel. First Horizon Nat. Corp. v. Baker*, No. 10-2413-STA, 2011 WL 976547, at *7 (W.D. Tenn. Mar. 16, 2011), *aff'd sub nom. Reid v. Baker*, 499 F. App'x 520 (6th Cir. 2012).

Because St. Ignatius alleges no infringing acts past 2021, St. Ignatius' Complaint fails, on its face, to state a claim.

## E.     St. Ignatius Chose Its Forums—It Should Not Be Permitted to Litigate the Facts Piecemeal

St. Ignatius chose to pursue baseless Lanham Act claims in state court instead of a federal court of concurrent jurisdiction. The Common Pleas court was less likely to have experience with Lanham Act cases than this Court. Indeed, it appears to be the first time counsel for St. Ignatius filed a Lanham Act in that forum. Despite this obvious forum shopping by St. Ignatius, Alexy Metals agrees with St. Ignatius that claim preclusion does not apply here to bar St. Ignatius' copyright claim because current Ohio law requires that the initial court could have heard the claim

12

and state courts lack jurisdiction over copyright claims.

While the Common Pleas court's decision does not preclude St. Ignatius' claims, it does preclude the litigation of facts already determined and necessary to the summary judgment.  St. Ignatius' argument that the federal court's exclusive jurisdiction to hear matters related to copyrights extends to issue preclusion is wrong on this point and miscites the two decisions it relies upon for its argument.  St. Ignatius cites *Stark v. Gov't Acct. Sols., Inc.*, No. 2:07-CV-755, 2009 WL 4842253, at *3 (S.D. Ohio Dec. 9, 2009) for the proposition that: "[A] state court's findings on matters distinctive to copyright law itself are not entitled to preclusive effect because, given exclusive federal jurisdiction over copyright infringement actions, the findings cannot have been necessary to the state-court judgment."  But the full passage from *Stark* reads:

> "***It is well-established that state courts can determine matters of state law, the subject of which is copyright, and [that] federal courts must afford preclusive effect to those findings, even if giving such preclusive effect impacts, in whole or in part, consideration of matters peculiar to copyright law.***" *Siegel v. Time Warner Inc.*, 496 F.Supp.2d 1111, 1129–30 (C.D.Cal.2007). On the other hand, a state court's findings on matters distinctive to copyright law itself are not entitled to preclusive effect because, given exclusive federal jurisdiction over copyright infringement actions, the findings cannot have been necessary to the state-court judgment. *Id*. at 1130. *See also RX Data Corp. v. Department of Social Services*, 684 F.2d 192, 197–98 (2d Cir.1982) (state-court judgment on contract claim had no collateral estoppel effect since there was no issue necessary to the determination of that judgment that was identical to any issue in action for copyright infringement).

*Id.* (emphasis added). The *Stark* court went on to **apply issue preclusion**, specifically "whether the defendants utilized Mr. Stark's source code and related software in their competing business or instead developed their own independent billing system" **and dismissed the plaintiff's copyright claim.** *Id.*

St. Ignatius's reliance on *Forry, Inc. v. Neundorfer, Inc*., No. C87-478, 1987 WL 177542,

13

at *5 (N.D. Ohio Apr. 9, 1987) to argue that issue preclusion does not apply in copyright cases is similarly misplaced for two reasons. First, *Forry* recites only claim preclusion principles and does address whether issue preclusion applies. *See id.* Second, *Forry* was decided prior to the Ohio Supreme Court's opinion in *Grava v. Parkman Twp.*, 73 Ohio St.3d 379, 383-84 (1995) announcing Ohio would "expressly adhere to the modern application of the doctrine of res judicata, as stated in 1 Restatement of the Law 2d, Judgments (1982), Sections 24–25," and overruling prior decisions inconsistent with that more expansive approach.

Under Ohio law "[i]ssue preclusion…serves to prevent relitigation of any fact or point that was determined by a court of competent jurisdiction in a previous action between the same parties or their privies. . . . Issue preclusion applies even if the causes of action differ." *O'Nesti v. DeBartolo Realty Corp.*, 862 N.E.2d 803, 806 (Ohio 2007) (citing *Fort Frye Assn., OEA/NEA v. State Employment Relations Bd.*, 692 N.E.2d 140, 143 (Ohio 1998).

> [B]y providing parties with an incentive to resolve conclusively an entire controversy involving the same core of facts, such refusal establishes certainty in legal relations and individual rights, accords stability to judgments, and promotes the efficient use of limited judicial or quasijudicial time and resources. The instability that would follow the establishment of a precedent for disregarding the doctrine of res judicata for "equitable" reasons would be greater than the benefit that might result from relieving some cases of individual hardship.

*Grava*, 73 Ohio St.3d at 383.

While Judge Collier-Williams' finding that the marks are not similar does not preclude the Court deciding the issue of substantial similarity here,[7] underlying facts that were essential to that finding must be given preclusive effect, namely the highlighted facts below:

---

[7] St. Ignatius misguidedly goes take a rabbit hole of misguided reasoning to the land of copyright preemption. The Court need not address that issue here as it is wholly inapplicable.

14

Here, in considering the above three-part test, Plaintiff admits that the shield shape is a pretty common enclosure. Plaintiff also admits that diagonal stripes on a shield design are not unique to St. Ignatius. Plaintiff further admits that the iconography used inside the shield is "Ignatian symbols" that are in most of the main identities in some way or another. The shield, stripes, AMDG, cross, wolves over a cauldron, and date of establishment are neither unique nor unusual in the field of education, particularly Jesuit education. Stylized shields are common ornamentation on goods from clothes to cars. Thus, this factor supports a finding of no confusion.

Factor 2 – Relatedness of the goods/services, or whether the products or services are similar. There is no dispute here; the parties' goods and services are completely unrelated to one another. Thus, this factor supports a finding of no confusion.

Doc #: 9-4 at PageID #: 79, also PageID #: 86. These facts are relevant to the substantial similarity and fair use analyses.

Moreover, because St. Ignatius has raised the issue of trademark harm in its fair use argument and because the issue of whether Alexy Metals' use harms St. Ignatius' trademark was already decided by the Common Pleas court *against* St. Ignatius, the summary judgment must be given full faith and credit here.

### III.  CONCLUSION

For the foregoing reasons, Alexy Metals respectfully requests that the Court dismiss the Complaint with prejudice or, alternatively, strike Paragraph 19 and sections C and D of the Prayer for Relief.

Date: June 17, 2026

Respectfully submitted,

/s/ Christina J. Moser
Christina J. Moser, #0074817
cmoser@bakerlaw.com
Melissa M. Bilancini, #98510
mbilancini@bakerlaw.com
Baker & Hostetler LLP
Key Tower
127 Public Square, Suite 2000
Cleveland, OH 44114
Telephone:     216.621.0200
Facsimile:     216.696.0740
Attorneys for Defendant Alexy Metals, Ltd.

16

## CERTIFICATE OF COMPLIANCE

This brief complies with the page limits for cases on the standard track.

/s/ Christina J. Moser
Christina J. Moser, #0074817
cmoser@bakerlaw.com
Melissa M. Bilancini, #98510
mbilancini@bakerlaw.com
Baker & Hostetler LLP
Key Tower
127 Public Square, Suite 2000
Cleveland, OH 44114
Telephone:*   216.621.0200
Facsimile:      216.696.0740
Attorneys for Defendant Alexy Metals, Ltd.

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on June 17, 2026, a copy of the foregoing Motion to Dismiss Plaintiff St. Ignatius High School of Cleveland's Complaint was filed electronically.  Notice of this filing will be sent to all parties by operation of the Court's electronic filing system.  Parties may access this filing through the Court's system.

/s/ Christina J. Moser
Christina J. Moser, #0074817
cmoser@bakerlaw.com
Melissa M. Bilancini, #98510
mbilancini@bakerlaw.com
Baker & Hostetler LLP
Key Tower
127 Public Square, Suite 2000
Cleveland, OH 44114
Telephone:*   216.621.0200
Facsimile:      216.696.0740
Attorneys for Defendant Alexy Metals, Ltd.

17