IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| ST. IGNATIUS HIGH SCHOOL OF CLEVELAND, | ) | Case No. 1:26-cv-00474 |
| | ) | |
| Plaintiff, | ) | JUDGE DAN AARON POLSTER |
| | ) | |
| v. | ) | |
| | ) | **OPINION AND ORDER** |
| ALEXY METALS, LTD., | ) | |
| | ) | |
| Defendant. | ) | |

Before the Court is Defendant Alexy Metals, Ltd.'s ("Alexy Metals") Motion for Attorneys' Fees and Costs (the "Motion"). ECF Doc. 20. Plaintiff St. Ignatius High School of Cleveland ("St. Ignatius") filed an opposition (ECF Doc. 24), and Alexy Metals filed a reply (ECF Doc. 25). Upon due consideration and for the reasons stated below, the Court **GRANTS** Defendant's Motion.

## I. BACKGROUND

In 2012, St. Ignatius engaged brand and advertising agency TWIST Creative, Inc. ("TWIST") to develop a new shield design for the school (the "Ignatius Shield"). ECF Doc. 1 at ¶ 2. The Ignatius Shield was first published on November 18, 2014. ECF Doc. 9 at 5; ECF 11 at 7. Alexy Metals developed a shield logo for its company (the "Alexy Shield") before making "minor changes" in 2021, which resulted in the final version at issue. ECF Doc. 1 at ¶¶ 11, 12; Doc. 8 at 1, 2 n.1. On September 11, 2024, St. Ignatius filed suit against Alexy Metals alleging trademark violations under the Lanham Act and various state law claims (the "State Action"). *See St. Ignatius High School of Cleveland v. Alexy Metals*, No. cv-24-103652 (Ohio Ct. Com. Pl.); ECF Doc. 9 at

3, ¶ 1.[1] While pursuing the State Action, St. Ignatius registered the Ignatius Shield with the United States Copyright Office, under Registration Number VA 2-479-195, effective April 29, 2025. ECF Doc. 1 at ¶ 9. Then, on February 23, 2026, the Cuyahoga Court of Common Pleas (the "State Court") notified the Parties that the trial date was cancelled and that a decision on Alexy Metals' motion for summary judgment was forthcoming. ECF Doc. 24 at 8 (citing ECF Docs. 9-1, 9-3).[2]

Two days later, on February 25, 2026, St. Ignatius brought this copyright infringement suit under 17 U.S.C. § 101 *et seq*., based on the same facts in the State Action. ECF Doc. 1. On July 6, 2026, the Court issued an opinion granting Alexy Metals' motion to dismiss (the "Order"). ECF Doc. 15. On August 10, 2026, Alexy Metals filed the instant Motion before the Court under the fee-shifting provisions of the Copyright Act. ECF Doc. 20.

## II. LAW & ANALYSIS

The Copyright Act permits awards of reasonable attorneys' fees and costs, at the court's discretion. 17 U.S.C. § 505. Courts "routinely" award attorneys' fees to prevailing parties in copyright infringement cases. *Bridgeport Music, Inc. v. WB Music Corp.*, 520 F.3d 588, 592 (6th Cir. 2008) (citing *Positive Black Talk, Inc. v. Cash Money Records, Inc.*, 394 F.3d 357, 380 (5th Cir. 2004); *Thoroughbred Software Int'l, Inc. v. Dice Corp.*, 488 F.3d 352, 362 (6th Cir. 2007)). However, a court must perform a "particularized, case-by-case assessment" of an award's appropriateness. *Kirtsaeng v. John Wiley & Sons, Inc.*, 579 U.S. 197, 202 (2016). In particular, courts apply the following nonexclusive factors in an evenhanded manner to prevailing plaintiffs

[1] The Court took judicial notice, as requested, of the State Court's proceedings and existence of documents filed in the State Action. *See* ECF Doc. 15 at 4, 9; *see also Granader v. Pub. Bank*, 417 F.2d 75, 82 (6th Cir. 1969) ("Federal courts may take judicial note of proceedings in other courts of record."). However, the Court has not taken judicial notice of the truth of the facts alleged therein. *See* ECF Doc. 15 at 9; *see also Hancock v. Miller*, 852 F. App'x 914, 919 (6th Cir. 2021) (noting that, in taking judicial notice, courts must consider only a document's existence, not accept the truth of the facts asserted therein).

[2] Judgment in favor of Alexy Metals was entered on March 6, 2026. *St. Ignatius High School*, No. cv-24-103652, slip op. (Ohio Ct. Com. Pl.).

and defendants in copyright infringement actions: frivolousness of the original action, objective unreasonableness in terms of the facts and law, motivation, compensation, and deterrence. *Fogerty v. Fantasy, Inc.*, 510 U.S. 517, 534 n.19 (1994). Lastly, the Court must determine the reasonable amount of attorneys' fees via the lodestar approach. *Studio A Ent., Inc. v. Action DVD*, 658 F. Supp. 3d 851, 856 (N.D. Ohio 2009) (citing *Hensley v. Eckerhart*, 461 U.S. 424 (1983)).

**A. Entitlement to Fees and Costs**

While the objective reasonableness factor "carries significant weight," it is not controlling, and courts should weigh all circumstances in light of the Copyright Act's purpose and goals. *Kirtsaeng*, 579 U.S. at 209. St. Ignatius's claim was objectively unreasonable, the suit's motivation was suspect, an award of attorneys' fees would promote deterrence, and such an award would serve the purposes of the Copyright Act.

i. <u>Objectively Unreasonable</u>

A copyright infringement claim is objectively unreasonable when filed "with no genuine idea as to whether a claim existed" and "general indifference to the merits of the claim." *Nat'l Bus. Dev. Servs., Inc. v. Am. Credit Ed. and Consult. Inc.*, 299 F. App'x 509, 513 (6th Cir. 2008). For example, filing a copyright infringement claim without proof to satisfy a required element of the claim is objectively unreasonable. *See Action Software, Inc. v. Emart LLC*, No. 1:06-cv-1400, 2008 WL 11381849, at *2 (N.D. Ohio June 20, 2008) (finding a copyright claim to be objectively unreasonable because plaintiff could not prove the first element: ownership of copyright).

First, St. Ignatius's former representation ("Former Counsel") waited nearly two years after commencing the State Action to bring the copyright infringement claim in this Court. *See* ECF Doc. 9 at 3, ¶ 1; ECF Doc. 1. Second, St. Ignatius disingenuously asserted that it sent a cease-and-

desist letter in May 2024 "promptly" after learning of the alleged infringement.[3] *See* ECF Doc. 11 at 6 n.2. Third, St. Ignatius maintained their claim based on an assumption that the individual elements were protectable, which they were not. *See* ECF Doc. 15 at 11-12, 17. Fourth, St. Ignatius applied the wrong copyright infringement standard. *See* ECF Doc. 24 at 5-6; ECF Doc. 25 at 2 n.1. Fifth, St. Ignatius sought barred relief. ECF Doc. 1 at 5, ¶ 19; ECF Doc. 12 at 16. Sixth, St. Ignatius disingenuously contended that it did not know that the State Court intended to grant Alexy Metals summary judgment upon notification that the trial was cancelled and a decision was forthcoming. *See* ECF Doc. 24 at 8. Then, two days after that notification, St. Ignatius filed an infringement claim in this Court based on facts nearly identical to those alleged in the State Action it lost, triggering issue preclusion. ECF Doc. 1; ECF Doc. 15 at 10-12. The Court concludes that St. Ignatius's copyright claim was objectively unreasonable.

As the Court already concluded, St. Ignatius's copyright claim would never be plausible because the two designs at issue are not substantially similar. ECF Doc. 15 at 15-18. In addition, issue preclusion barred St. Ignatius's claim since it largely duplicated St. Ignatius's unsuccessful claims brought in the State Action. *Id.* at 10-12. These two failures undermine the Opposition's argument that the claims were reasonable despite their lack of success. *See* ECF Doc. 24 at 4-5.

St. Ignatius incorrectly assumes that merely proving that its compilation was protectable proves that the Alexy Shield infringed it. *See* ECF Doc. 24 at 5. As an initial matter, as both the State Court and this Court have said, the Ignatius Shield's individual elements—a shield-shaped enclosure, diagonal stripes, Ignatian iconography, AMDG, cross, wolves over a cauldron, and date of establishment—are not protectable because they are generic and must be filtered out for

[3] While the Court has not taken judicial notice of the truth of the facts alleged in documents filed on the docket in the State Action, the Motion cites to email evidence establishing St. Ignatius employees' knowledge of the Alexy Shield in August 2021, and St. Ignatius has not contested that evidence. *See* ECF Doc. 20 at 6.

infringement analysis. ECF Doc. 15 at 11-12, 17. Moreover, the full compilation of these unprotected elements does not appear in the Alexy Shield. The only overlap is the presence of a cross within a larger design element featuring different letters, diagonal stripes, and a (different) date of establishment contained in a shield-shaped enclosure. The remaining elements in the Alexy Shield do not match the Ignatius Shield. Thus, taken as a whole, the compilations of the two works are not substantially similar. *See Ross, Brovins & Oehmke, PC v. Lexis Nexis Grp.*, 463 F.3d 478, 483 (6th Cir. 2006) (reasoning that copying sixty-one percent of a compilation does not establish substantial verbatim copying or substantial similarity necessary to qualify as infringement).

Similarity matters because the law prohibits copying, not merely looking at a work to generate ideas. *See Blehm v. Jacobs*, 702 F.3d 1193, 1208 (10th Cir. 2012) (concluding that defendant's copying did not violate copyright law because substantial similarity analysis showed defendant copied ideas rather than expression); *ACT, Inc. v. Worldwide Interactive Network, Inc.*, 46 F.4th 489, 502–03 (6th Cir. 2022) (rejecting an argument that a revised document could not be a direct copy because the infringing document was a "simply reworded . . . slightly modified" version of the direct copy and of plaintiff's copyrighted work). The alleged infringing work must still be a copy of the work at issue. If the two do not resemble each other, then one cannot be a copy of the other, despite access or alleged inspiration.

St. Ignatius's claims and litigation strategy mirror those present in *Bridgeport Music, Inc. v. Diamond Time, Ltd.*, 371 F.3d 883, 895 (6th Cir. 2004), which St. Ignatius cited for the principle that a court should not award attorneys' fees to the prevailing party when claims are reasonable, yet unsuccessful. *See* ECF Doc. 24 at 3. The Sixth Circuit there deemed plaintiff's claims "objectively unreasonable." *Diamond Time*, 371 F.3d at 895–96. The claims were time-barred. *Id.*

at 895. In addition, counsel did not weigh the strength of the various claims brought against hundreds of defendants. *Id.*

The claims here were similarly barred, by issue preclusion. *See* ECF Doc. 15 at 12. The State Court determined the State Action issue (customer confusion) by considering distinctiveness, which is at the heart of the issue here (substantial similarity). *See id.* at 11. Also, St. Ignatius did not weigh the strength of its claims before bringing them in this manner. After all, St. Ignatius had to concede, a short time after filing the complaint, that it was not entitled to requested statutory damages and attorneys' fees, and had admitted its copyrighted individual elements were not protectable. ECF Doc. 12 at 16; ECF Doc. 20 at 5 (citing ECF Doc. 9-4 at 5). In sum, bringing these claims in this manner was objectively unreasonable.

ii. Motivation

Litigation tactics that support an inference regarding motivation may justify an award of attorneys' fees. *Bridgeport Music, Inc. v. Rhyme Syndicate Music*, 376 F.3d 615, 628 (6th Cir. 2004).

St. Ignatius delayed bringing its federal claims. St. Ignatius contends that it sent a May 2024 cease-and-desist letter to Alexy Metals "promptly" after learning of the alleged infringement. ECF Doc. 11 at 6 n.2. However, the Opposition does not challenge email evidence cited in the Motion and produced in the State Action demonstrating that St. Ignatius's employees were aware of the alleged infringement in August 2021. *See* ECF Doc. 20 at 6. St. Ignatius also argues that it did not delay this action because it filed the Complaint within a month of the copyright registration decision of January 28, 2026. ECF Doc. 24 at 7, 11. However, the Opposition does not address why St. Ignatius waited until 2026 to register a copyright for a design completed in 2014. *See* ECF Doc. 25 at 5 & n.3. Notwithstanding arguments related to timing, *see* ECF Doc. 24 at 7, St. Ignatius

still waited nearly two years after its cease-and-desist letter to bring claims in this Court—without explanation.

Moreover, filing this action occurred on the heels of St. Ignatius's State Action loss, and St. Ignatius has provided no explanation for this delay. St. Ignatius argues that it was not on notice that the State Court would grant summary judgment in favor of Alexy Metals. ECF Doc. 24 at 8. The Opposition characterizes the State Court's cancellation of the trial date as "procedural" and not indicative of a summary judgment ruling. *Id.* This is disingenuous. The State Court was not rescheduling the trial date, and outright cancellation had one logical explanation. If St. Ignatius was truly surprised by the grant of summary judgment, St. Ignatius could have promptly dismissed its federal case. This chain of events calls into question St. Ignatius's motives.

St. Ignatius also has not explained why it did not file all of its claims together in this Court. St. Ignatius's litigation strategy wasted judicial resources and increased expense to Alexy Metals.

Indeed, the motives here echo those in *Diamond Time*. There, the Sixth Circuit agreed with the District Court that the way plaintiffs undertook and prosecuted the case appeared designed to increase fees and, thereby, extract a "nuisance settlement." *Diamond Time*, 371 F.3d at 896. Here, St. Ignatius's decision to bring a State Case and then another suit in this Court two years later based on the same facts suggests a similarly improper motive.

A pattern of lodging inappropriate arguments emerged here as well. For example, St. Ignatius initially demanded statutory damages and attorneys' fees, only dropping them when Alexy Metals pointed out that St. Ignatius was not entitled to them. ECF Doc. 1 at 5, ¶ 19; ECF Doc. 8 at 13-14; ECF Doc. 12 at 16. St. Ignatius also misapplied or misrepresented several cited decisions. *See, e.g.*, ECF Doc. 12 at 18 (quoting *Stark v. Gov't Acc. Sols., Inc.*, No. 2:07-cv-755, 2009 WL 4842253, at *7 (S.D. Ohio Dec. 9, 2009), out of context to argue that federal jurisdiction over

copyright infringement claims precludes issue preclusion); ECF Doc. 24 at 8 (mis-paraphrasing the facts and reasoning of *Est. of Hevia v. Portrio Corp.*, 602 F.3d 34, 46 (1st Cir. 2010), to argue that bringing two related suits does not merit an award of attorneys' fees).[4] This tendency to present unnecessary or ill-formed arguments likewise suggests a suspicious motivation.

iii. Deterrence

Given all of the above, an award of attorneys' fees to Alexy Metals would deter St. Ignatius and potentially other litigants from bringing meritless claims. In *Diamond Time*, the Sixth Circuit ruled that an award of attorneys' fees would properly deter misuse of the court's resources. *Diamond Time*, 371 F.3d at 896. Likewise, here, an award of attorneys' fees would deter misuse of judicial resources, from nearly duplicative actions based on flawed claims, as has already occurred here.

Alexy Metals alleges that it made monetary offers to resolve this case, which St. Ignatius rejected. *See* ECF Doc. 20 at 8. The fact that St. Ignatius did not respond to this allegation in the Opposition creates an inference that St. Ignatius unreasonably continued to prosecute this meritless case. An award of attorneys' fees properly deters parties from continuing to litigate and not engaging in good-faith negotiations, when substantial evidence shows liability and the damages are statutory. *Studio A*, 658 F. Supp. 2d at 855. Here, substantial evidence demonstrates that the action was objectively unreasonable. *See supra* Section II.A.i. Moreover, St. Ignatius did not calculate actual damages. *See* ECF Doc. 12 at 16-17. These two facts make St. Ignatius's settlement position questionable. The Court finds deterrence appropriate.

[4] The *Stark* court indeed applied issue preclusion as to whether defendants misappropriated plaintiff's source code and software or developed their own system, and dismissed the relevant count. *Stark*, 2009 WL 4842253, at *3, 6. In *Estate of Hevia*, "the complaints in the cases filed in the local court . . . did not concern the copyright dispute in any way," unlike here. *See Est. of Hevia*, 602 F.3d at 46. Furthermore, the district court there exercised its broad discretion to decide whether bad faith warranted fee-shifting. *Id.* In contrast, the analytical framework under 17 U.S.C. § 505 applies here. ECF Doc. 20 at 1-2.

iv. Purpose of the Copyright Act

An award of attorneys' fees would also satisfy the purpose of the Copyright Act. The Copyright Act's purpose is to encourage the production of creative work and enrich the public through access to that work. *Fogerty*, 510 U.S. at 527 (citing *Twentieth Century Music Corp. v. Aiken*, 422 U.S. 151, 156 (1975)); *Feist Publ'ns., Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 349–50 (1991)). Deterring misuse of judicial resources, "stale claims," and actions brought to exact costs and force settlement may promote the Copyright Act. *See Diamond Time*, 371 F.3d at 895.

St. Ignatius's loss alone does not deter future aggressive litigation. Awarding fees warns plaintiffs not to drag others into costly defense of unreasonable claims brought with suspect motives. *Coles v. Wonder*, 283 F.3d 798, 803 (6th Cir. 2002). This warning would, thereby, support the ongoing production of dissimilar works and the creative reinvention of unprotected elements or ideas. Such encouragement would increase the public's access to a widening pool of diverse expression, even work inspired by or emerging from an existing tradition or form, as may be the case here. To be sure, protecting protectable art is necessary to safeguard artists' work from theft and to support their valuable, continued efforts. However, overzealous litigation chills an artistic process that, at times, arrives at novelty through the reimagining of existing work. Even those artists who pursue purely innovative and non-derivative work may think twice before adding their creations to the stream of commerce, for fear of unreasonable suit. Not every conceivable copyright infringement claim should be brought. In the end, weighing claims' strength and declining to pursue litigation can preserve the health of the creative industry. Thus, the deterrent effect of an award of attorneys' fees would serve the Copyright Act's purpose.

St. Ignatius's loss also does not offset the effect of the unreasonable claim. After all, courts should encourage defendants' meritorious copyright defenses to the same extent as plaintiffs'

meritorious claims and consider "the fact that a successful defense of a copyright infringement action may further the policies of the Copyright Act every bit as much as a successful prosecution of an infringement claim by a holder of a copyright." *Diamond Time*, 371 F.3d at 893 n.8. An award of attorneys' fees would further acknowledge the importance of Alexy Metals' successful defense in serving the purposes of the Copyright Act.

The Court finds that the above *Fogerty* factors weigh in favor of Alexy Metals. Therefore, the Court concludes that an award of reasonable attorneys' fees and costs is appropriate under 17 U.S.C. § 505. The inquiry now shifts to the amount of reasonable attorneys' fees and costs.

**B. Amount of Fees and Costs**

Lodestar calculation produces a presumptively reasonable fee to be awarded to the prevailing party under the Copyright Act. *See, e.g.*, *Studio A*, 658 F. Supp. 2d at 856 (citing *Bldg. Serv. Local 47 Cleaning Contractors Pension Plan v. Grandview Raceway*, 46 F.3d 1392, 1401 (6th Cir. 1995)); *Broad. Music, Inc. v. J.M. Cirelli, Inc.*, No. 1:03-cv-2456, 2006 WL 3386911, at *4 (N.D. Ohio Nov. 21, 2006); *see also Ametex Fabrics v. Custom Interiors & Supply Co.*, No. 97-5627, 1998 WL 553046, at *3 (6th Cir. Aug. 11, 1998) (unpublished table decision) (applying the lodestar approach as the "proper method" for determining reasonable attorneys' fees in a copyright case).

The lodestar method requires multiplying a reasonable hourly billing rate by a reasonable number of hours spent on the case. *Studio A*, 658 F. Supp. 2d at 856 (citing *Hensley*, 461 U.S. at 433). A reasonable hourly billing rate is based on the prevailing market rate. *Mikolajczyk v. Broadspire Servs., Inc.*, 499 F. Supp. 2d 958, 965 (N.D. Ohio 2007) (citing *Adcock-Ladd v. Sec'y of Treasury*, 227 F.3d 343, 350 (6th Cir. 2000)). And reasonable time spent cannot include "hours that are excessive, redundant, or otherwise unnecessary." *Hensley*, 461 U.S. at 434.

The Court finds the time spent between Ms. Christina J. Moser and Ms. Melissa M. Bilancini on Alexy Metals' defense, totaling 46.8 hours, to be reasonable given the nature of the claims, arguments, and case demands. *See* ECF Doc. 20 at 9-10; ECF Doc 20-1 at 2-4. That number of hours is not excessive when defending a case through dismissal. *See Merrill v. Contract Freighters, Inc.*, No. 1:19-cv-02309-CMA-SKC, 2021 WL 3742242, at *3 (D. Colo. Aug. 24, 2021) (deeming 41.5 hours expended regarding a motion to dismiss to be reasonable). Moreover, Alexy Metals' contemporaneous billing documentation offers dated summaries of tasks and subject matter with "sufficient detail and probative value to enable the court to determine with a high degree of certainty that such hours were actually and reasonably expended" in the defense of this litigation. *See Imwalle v. Reliance Med. Prods., Inc.*, 515 F.3d 531, 552–53 (6th Cir. 2008); *see also* ECF Docs. 20-1 & 20-3. As the Reply highlights, St. Ignatius has not challenged the reasonableness of Alexy Metals' hours expended. ECF Doc. 25 at 1. The Court likewise takes no issue with the number of hours.

In addition, the Court finds the proposed billing rates in keeping with the prevailing market rate. This conclusion takes into consideration Ms. Moser's and Ms. Bilancini's declared practice location, employer size, specialization, and expertise as co-leader of BakerHostetler's Global Trademark and Brand Protection group with twenty-seven years of experience and as a seventh-year associate, respectively. *See* ECF Doc. 20 at 10-13; ECF Doc 20-1 at 1-2, 4-5; *see also Yellowbook Inc. v. Brandeberry*, 708 F.3d 837, 849 (6th Cir. 2013) (noting that the prevailing market rate encompasses the relevant community and lawyers of comparable skill and experience).

As the Reply highlights, St. Ignatius has not challenged the proposed billing rates. ECF Doc. 25 at 1. Ms. Moser and Ms. Bilancini charged rates of $880 and $630 per hour, respectively. ECF Doc. 20 at 12; ECF Doc. 20-1 at 1-2. Alexy Metals supports the rates' reasonableness through

citation to comparable trademark and copyright cases. *See* ECF Doc. 20 at 12-13 (collecting cases); *see also Mikolajczyk*, 499 F. Supp. 2d at 965 ("Proof of prevailing market rates may be demonstrated [through] . . . citations to prior precedents showing reasonable rate adjudications for the fee applicant, for comparable attorneys, or for comparable cases[.]") (quoting *Disabled Patriots of Am. v. Genesis Dreamplex, LLC*, No. 3:05-cv-7153, 2006 WL 2404140, at *3 (N.D. Ohio 2006)). Comparable attorneys in the relevant community charge similar rates. *See* Ohio State Bar Ass'n, *The Econ. of L. Prac. in Ohio* 39 (2024) (calculating the ninety-fifth percentile of hourly billing rates charged by associates in an Ohio firm with eight or more partners as $761). The Court, thus, finds the proposed rates commensurate with the case and prevailing market.

Consequently, the Court has determined the total attorneys' fees sought, in the amount of $34,590.00, *see* ECF Doc. 20 at 14, to be reasonable.

## III. Conclusion

For the reasons stated above, the Court hereby **GRANTS** the Motion and awards Alexy Metals attorneys' fees and costs in the amount of $34,590.00.

**IT IS SO ORDERED.**

Dated: September 21, 2026

***/s/ Dan Aaron Polster***
**Dan Aaron Polster**
**United States District Judge**